Leon BURTS, Appellant,

v.

Ann BURTS, Appellee.

No. S–13822.

Supreme Court of Alaska.

Dec. 2, 2011.

338

rior court valued Leon's post-retirement military health insurance benefit as a marital asset and allocated it to Leon. Leon appeals, arguing that the benefit is too speculative to be valued and that state courts are preempted from treating this type of federal benefit as a marital asset. We affirm the superior court's characterization of this benefit as marital property, but conclude the court's valuation was erroneous. We remand for reconsideration of the value of this benefit.

## II. FACTS AND PROCEEDINGS

Leon Burts joined the military on February 15, 1979. He married Ann five years later and they had a son in 1989. The family moved numerous times over the course of Leon's military service, ultimately settling in Anchorage in 1993. Ann worked as a part-time dental assistant before the family moved to Anchorage. After the family moved to Anchorage, Ann stayed home with their son for six years, then resumed part-time work. She also worked full-time for approximately three years. Leon retired from the military in March 1999 after 20 years of service and 15 years of marriage. He subsequently obtained two new jobs: one as a civil service employee servicing airplanes and one as an assembler at Walmart.

Roy V. Williams, Eagle River, for Appellant.

Timothy P. Peters, Law Office of Timothy P. Peters, LLC, Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

CHRISTEN, Justice.

## I. INTRODUCTION

Leon Burts, a retired military service member, filed for divorce in 2009. The supe-

As a military retiree with over 20 years of service, Leon receives TRICARE health insurance.[1] The basic plan, called TRICARE Standard, has a $150 deductible with no annual enrollment fee; coverage is automatic for all military retirees.[2] For an additional annual premium, a military retiree may upgrade to TRICARE Prime, which has no deductible and reduced out-of-pocket costs for services.[3] This is the policy that Leon carried at the time of the divorce. At age 65, Leon will transition to TRICARE for Life, which is a Medicare wraparound policy with no annual enrollment fees aside from Medi-

---

1. *See* TRICARE COSTS, http://www.tricare.mil/tma/tricarecost.aspx. (last visited Nov. 28, 2011).

2. *See id.; see also* DEP'T OF DEFENSE, TRICARE STANDARD HANDBOOK 7 (2010), *available at* http://www.tricare.mil/trica resmartfiles/Prod_430/Standard_

HB_10_LoRes.pdf ("Enrollment is not required for TRICARE Standard ... there are no enrollment forms to fill out and no enrollment fees.").

3. *See* TRICARE COSTS, http://www.tricare.mil/tma/tricarecost.aspx. (last visited Nov. 28, 2011).

care Part B premiums.[4]

Leon also receives health care through the United States Department of Veterans Affairs (VA). When Leon retired from military service in 1999, veterans without disabilities were still eligible for VA health care. In 2003, VA health care was amended to provide care only for those service members with disabilities or below-average incomes for their communities.[5] Leon enrolled for VA health care before the 2003 amendment, but he also has a 20% disability rating. Ann's expert, Sheila Miller, testified that Leon's VA health care benefit is worth the same as, if not more than, his TRICARE benefit.

Leon also has a military pension and a Federal Employee Retirement System (FERS) pension.

Ann resumed working full-time in September 2009, but she does not receive health coverage from her employer. Ann was eligible for one year of TRICARE coverage post-divorce,[6] but she will have to obtain her own private health insurance thereafter.

The parties' son, Tyler,[7] has special needs. Although he is no longer a minor, a neuropsychological evaluation indicated that Tyler was likely incapable of independent living at the time of the divorce. Tyler is covered by Leon's TRICARE insurance, which Leon agreed to continue providing until Tyler reaches age 23—the maximum age Leon believed he could provide medical coverage for him under TRICARE.

Leon filed for divorce on July 28, 2009. The superior court ordered a 50–50 split of

the marital portion of Leon's military pension (less disability pay) and a 50–50 division of his FERS pension. The superior court also characterized 75% of Leon's TRICARE insurance as a marital asset because the parties were married for 15 of Leon's 20 years of military service. The superior court valued this military health insurance benefit at $125,959 based on a report produced by Sheila Miller, and it allocated this value to Leon in its property division. The superior court awarded Ann the marital home and the marital portion of the Thrift Savings Plan (TSP) Leon earned during his federal service.

The superior court observed that its distribution resulted in Ann receiving approximately 62% of the marital estate and Leon receiving 38%, but these percentages do not include the 50–50 division of the marital portion of Leon's military and FERS pensions. When these marital pensions are factored in, the overall property division is closer to 57% and 43% respectively. The superior court found its distribution to be equitable given the parties' unequal earning capacity, respective circumstances, and Ann's need to keep the marital home because she would be caring for the parties' son.

Leon appeals the superior court's characterization and valuation of his TRICARE benefit as a marital asset. He also appeals the superior court's overall division of the marital estate.

## III. STANDARD OF REVIEW

■■■ Dividing marital property is a

---

4. *See* Dep't of Defense, Tricare for Life Handbook 1 (2010), *available at* http://www.tricare.mil/tricaresmartfiles/Prod_502/ TRICARE_For_Life_Handbook_2011_508_mall_acrobat 5.pdf.

5. *See Changes to the Priority Group 8 Enrollment Restriction*, U.S. Dep't of Veterans Affairs (Sept. 15, 2009), http://web.archive.org/web/20101018000330/http://www4.va.gov/healtheligibility/eligibility/PG8Relaxation.asp; *VA to Offer Health Care to Previously Ineligible Veterans*, U.S. Dep't of Veterans Affairs (Jan. 8, 2009), http://www1.va.gov/opa/pressrel/pressrelease.cfm?id=1641. In 2009 the military re-expanded the limits to provide veteran's care to some non-disabled veterans with above average incomes (10% above average or less). *Changes to the Priority Group 8*

*Enrollment Restriction*, U.S. Dep't of Veterans Affairs (Sept. 15, 2009), http://web.archive.org/web/20101018000330/http://www4.va.gov/healtheligibility/eligibility/PG8Relaxation.asp. The average income in 2010 for Anchorage was $45,100. *2010 GMT Tables for Priority Groups 1–7 for the State of Alaska*, U.S. Dep't of Veterans Affairs, http://www4.va.gov/healtheligibility/Library/tools/GMT/index.asp (last visited Nov. 28, 2011).

6. A "20/20/15" former spouse like Ann (20 years of marriage, 20 years of military service, and 15 years of overlap) is entitled to remain on TRICARE for only one year following divorce. 10 U.S.C. § 1072(2)(G), (H) (2006).

7. We use a pseudonym to protect the parties' son's privacy.

three-step process.[8] First, the trial court must determine what property is available to distribute and characterize it as either marital or separate.[9] We ordinarily review this step for abuse of discretion, but if it concerns a question of law we review the determination using our independent judgment.[10] Second, the trial court must value the property.[11] We review a superior court's value determination for clear error, which exists when we are "left with a definite and firm conviction on the entire record that a mistake has been made." [12] Third, the trial court must equitably allocate the marital estate, taking into account specified factors.[13] We review the allocation of marital property for abuse of discretion.[14]

## IV. DISCUSSION

Leon argues the superior court erred by characterizing his TRICARE benefit as a marital asset and in calculating TRICARE's value. He also claims the marital assets were not distributed equitably. We discuss each argument in turn.

### A. The Superior Court Did Not Err In Characterizing Leon's TRICARE Benefit As Marital Property.

We have repeatedly recognized that "[h]ealth insurance benefits earned during the marriage are a marital asset of the insured spouse," [15] but we have not yet specifically addressed the characterization of *military* health insurance benefits. Leon argues that this type of health insurance benefit should be treated differently from other types of health insurance benefits because military benefits are: (1) subject to congressional discretion and thus too speculative to

be valued; and (2) federally authorized, and state courts are therefore preempted from considering them in marital property divisions.

### 1. TRICARE is not too speculative to be valued.

■ Leon argues that the superior court should not have characterized his TRICARE benefit as a marital asset because the future of this benefit is uncertain. He argues that because military health insurance is funded by the Department of Defense budget, and because the Department of Defense budget has to be re-appropriated by Congress each year, Congress could eliminate TRICARE at any time. Leon claims congressional discretion makes the benefit too speculative to be considered as a marital asset.

In support of his argument, Leon first relies on *Schism v. United States.*[16] In *Schism,* the United States Court of Appeals for the Federal Circuit addressed whether military retirees are contractually entitled to free lifetime medical care. The court held they are not, explaining that: "[b]enefits for retired military personnel . . . depend upon an exercise of legislative grace, not upon principles of contract, property, or 'takings' law." [17] *Schism* did not discuss whether the future of this type of benefit is "speculative," but Ann's expert testified that while "[t]here have been permutations of the plan, . . . fundamentally free health care as a part of participation in the military forces during and after service is a concept that has been adhered to since the 1880s." Leon offered no competing evidence on this point. In our view, the future of a program that has been

**8.** *Hansen v. Hansen,* 119 P.3d 1005, 1009 (Alaska 2005) (citing *Moffitt v. Moffitt,* 749 P.2d 343, 346 (Alaska 1988)).

**9.** *Id.*

**10.** *Id.* (internal citations omitted).

**11.** *Id.* (citing *Moffitt,* 749 P.2d at 346).

**12.** *Id.* (citing *Martens v. Metzgar,* 591 P.2d 541, 544 (Alaska 1979)).

**13.** *See* AS 25.24.160(a)(4); *see also Hansen,* 119 P.3d at 1009 (citing *Moffitt,* 749 P.2d at 346).

**14.** *Hansen,* 119 P.3d at 1009 (citing *Moffitt,* 749 P.2d at 346).

**15.** *Id.* at 1015 (citing *Kinnard v. Kinnard,* 43 P.3d 150, 156 (Alaska 2002)); *see also Ethelbah v. Walker,* 225 P.3d 1082, 1087–90 (Alaska 2010); *Sparks v. Sparks,* 233 P.3d 1091, 1097 (Alaska 2010) (citing *Hansen,* 119 P.3d at 1015).

**16.** 316 F.3d 1259 (Fed.Cir.2002).

**17.** *Id.* at 1268 (citing *Zucker v. United States,* 758 F.2d 637, 640 (Fed.Cir.1985)).

approved by Congress for over 120 years is not too speculative to be characterized as a marital asset. Further, to the extent Leon is arguing that potential future changes make TRICARE too speculative, we observe that benefits in Alaska's Public Employees' Retirement System (PERS) and Teachers' Retirement System (TRS) have been significantly modified and restructured in the past,[18] but we allow those benefits to be characterized as marital assets for purposes of property division.[19]

Federal pensions, like military health benefits, have been described as being subject to congressional discretion,[20] yet state courts routinely characterize military pensions as marital property and award marital shares of them under the Uniformed Services Former Spouses' Protection Act (Former Spouses' Protection Act).[21] Indeed, the superior court characterized Leon's military pension as a marital asset in this case. Brought to its logical conclusion, Leon's argument that his military health benefit is too speculative to be considered a marital asset implies that military pensions cannot be characterized as such either because they are also dependent upon congressional appropriations. Such a ruling would ignore the intent of the Former Spouses' Protection Act[22] and our past precedent.[23] Leon has offered no rationale to justify distinguishing military health benefits earned during the course of a marriage from military pensions earned during the course of a marriage.

Finally, Leon compares this case to *In re Marriage of Ellis*, where a city employer was paying 100% of the employee's health insurance premiums, subject to redetermination each year.[24] When the employee divorced, the California court held the subsidies were not community property because, in part, "there is nothing in the plan that guarantees [the employee] will either always receive a subsidy in a specific amount, or the subsidy will always equal the premium for available coverage."[25] Leon contends the holding in *Ellis* suggests that discretionarily provided health plans are too speculative to be marital assets.

At the outset, we note *Ellis* is a case from the California Court of Appeals; it is not binding precedent in Alaska.[26] Further, California follows community property laws to determine divorce distributions, but Alaska uses a statutory scheme of equitable division codified in AS 25.24.160(a)(4).[27] Moreover, part of the *Ellis* court's rationale for excluding the subsidy from the marital estate was the court's observation that "the right to subsidized health insurance is not convertible to cash."[28] In Alaska, we have said that "market transferability is not a prerequisite to determining value for property division purposes" so long as the court can "objectively determine that [the property] has value to

**18.** *See About the Division of Retirement and Benefits*, ALASKA DEP'T OF ADMIN. RET. & BENEFITS, http://doa.alaska.gov/drb/help/about.html (last visited Nov. 28, 2011).

**19.** *See, e.g., Ethelbah*, 225 P.3d at 1087–90; *Hansen*, 119 P.3d at 1015.

**20.** *Schism*, 316 F.3d at 1272 (quoting *Lynch v. United States*, 292 U.S. 571, 577, 54 S.Ct. 840, 78 L.Ed. 1434 (1934)) ("Pensions ... are gratuities.... The benefits conferred by gratuities may be redistributed or withdrawn at any time in the discretion of Congress.").

**21.** *See, e.g., Young v. Lowery*, 221 P.3d 1006, 1011 (Alaska 2009) ("State courts have limited authority to equitably divide a military pension upon divorce."); *see also* Former Spouses' Protection Act, 10 U.S.C. § 1408 (2006).

**22.** *See infra* notes 60–61 and accompanying text.

**23.** *Young*, 221 P.3d at 1011.

**24.** 101 Cal.App.4th 400, 124 Cal.Rptr.2d 719 (2002).

**25.** *Id.* at 725.

**26.** *See Kott v. City of Fairbanks*, 661 P.2d 177, 182–83 (Alaska 1983) ("The precedential authority referred to is a series of cases from other jurisdictions, which are not binding upon this court.").

**27.** *See Clauson v. Clauson*, 831 P.2d 1257, 1262 (Alaska 1992) (distinguishing community property states, like California, from equitable distribution states, like Alaska, though both are restricted from dividing veterans' disability benefits received in place of waived retirement pay).

**28.** *Ellis*, 124 Cal.Rptr.2d at 724 (discussing *In re Marriage of Havins*, 43 Cal.App.4th 414, 50 Cal. Rptr.2d 763, 766 (1996)).

its owner." [29] Leon's TRICARE benefit can be objectively valued,[30] and Ann's expert provided such a valuation in this case. We conclude that TRICARE is not too speculative to be characterized as marital property simply because it is subject to congressional appropriation.

### 2. State courts are not preempted from considering TRICARE in marital property divisions.

■ The superior court characterized Leon's TRICARE benefit as a marital asset and allocated it to Leon in its division of marital property. The superior court did not transfer any part of the benefit to Ann, but Leon argues that federal law preempts state courts from characterizing a TRICARE benefit as a marital asset.

■ Under the Supremacy Clause of the United States Constitution, state law must yield if it conflicts with federal law.[31] The United States Supreme Court has recognized two "touchstones" of preemption jurisprudence:

> First, the purpose of Congress is the ultimate touchstone in every pre-emption case.... Second, in all pre-emption cases, and particularly those in which Congress has legislated in a field which the States have traditionally occupied, [courts] start with the assumption that the historic police

powers of the State were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.[32]

The United States Supreme Court recognizes a presumption against preemption in areas of traditional state regulation, such as family law.[33] We have similarly recognized a presumption against federal preemption of state law.[34]

■ There are three types of federal preemption that can overcome this presumption: "express,"[35] "field," and "conflict" preemption.[36] Leon first invokes "field" preemption, arguing that the laws passed to effectuate TRICARE are extensive and leave no room for state regulation. Field preemption occurs when "the federal law governing a particular area is so comprehensive and so complete that Congress is said to have completely occupied a field, leaving no room for state law."[37] Our court has explained that "[w]e 'will not infer an intent to occupy the field where Congress has left some room for state involvement.'"[38] Although Congress has not directly addressed awards of military health insurance benefits in the context of domestic property divisions, it has addressed the states' role in dividing military pensions through the Former Spouses' Protection Act.[39] Under this federal law, "a [state] court may treat disposable retired pay to a [ser-

29. *Hansen v. Hansen*, 119 P.3d 1005, 1015 (Alaska 2005) (concluding health insurance benefits may be valued as marital property); *see also Martin v. Martin*, 52 P.3d 724, 731 (Alaska 2002) (holding non-transferable frequent flyer miles to be marital property).

30. *See* Tracy Foote, Military Divorce Tips 17 (2010) ("An accountant specializing in health costs [can] be hired to place a net present value on [the full military health care] loss."); Mark E. Sullivan, The Military Divorce Handbook 522 (American Bar Association, 2006) ("[TRICARE] can be evaluated by an expert, and this value can be allocated to [the military spouse] as part of the retirement benefits he receives.").

31. *Allen v. State, Dep't of Health & Soc. Servs., Div. of Pub. Assistance*, 203 P.3d 1155, 1161 (Alaska 2009) (citing *State v. Dupier*, 118 P.3d 1039, 1049 (Alaska 2005)).

32. *Wyeth v. Levine*, 555 U.S. 555, 129 S.Ct. 1187, 1194–95, 173 L.Ed.2d 51 (2009) (internal quotation marks, alterations, and citations omitted).

33. *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 152, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (citing *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979)).

34. *Allen*, 203 P.3d at 1160 (internal citations omitted).

35. Express preemption occurs when Congress "explicitly declares an intent to preempt state law in a particular area." *Id.* at 1161. Leon does not allege that express preemption applies.

36. *Id.* (citing *Dupier*, 118 P.3d at 1049).

37. *Id.*

38. *Id.* (quoting *Dupier*, 118 P.3d at 1050).

39. 10 U.S.C. § 1408 (2006).

vice] member . . . either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of the court."[40] States consequently retain the ability to determine how to characterize disposable retired pay in property division cases. Because Congress "left some room for state involvement" in distributing some military retirement benefits, we do not infer an intent to completely occupy this field.[41]

Leon also raises a conflict preemption argument. Conflict preemption occurs when "a state law and a federal law are in conflict" either: (1) "because compliance with both state and federal law is impossible"; or (2) "because the state law stands as an obstacle to accomplishment and execution of the full purposes and objectives of Congress."[42] Leon briefly mentions *Mansell v. Mansell*[43] to support his preemption argument. We explained the procedural history surrounding *Mansell* in *Young v. Lowery*:

> The United States Supreme Court held in *McCarty v. McCarty* that federal law on military pensions preempted state domestic relations law and barred state courts from treating military retired pay as marital property divisible upon divorce. The following year Congress overruled *McCarty* by passing the Uniformed Services Former Spouses' Protection Act (USFSPA), allowing state courts to treat a portion of a service member's military retired pay—termed "disposable retired pay"—as marital property divisible upon divorce according to state domestic relations law. . . . After Congress passed the USFSPA the Supreme Court ruled in

*Mansell v. Mansell* that a state court may consider only USFSPA-defined disposable retired pay as marital property divisible upon divorce. Accordingly, a court may not equitably divide total retired pay; it may equitably divide only the amount of retired pay remaining after the court deducts waived retired pay and the cost of purchasing survivor benefits.[44]

In his closing argument in the superior court, Leon urged the court to rule that *Mansell* prevented the award of his Veterans Administration health care benefit;[45] he did not claim that *Mansell* prohibited the superior court's characterization of his TRICARE benefit as a marital asset. Leon's preemption argument regarding his TRICARE benefit relied solely on the congressional purpose of the TRICARE program. We have repeatedly held that "[i]ssues not properly raised or briefed at trial are not properly before this court on appeal."[46] Further, "where a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal."[47] Leon mentions *Mansell* in his opening appellate brief to show that he raised a preemption claim below, and that he therefore did not waive his right to bring a preemption claim on appeal. But Leon does not explain how *Mansell* applies to TRICARE benefits—nor does his brief mention *Mansell* again. Because Leon's reference to *Mansell* goes strictly to his VA care, not TRICARE, he waived any argument that *Mansell* prohibits the characterization of TRICARE as a marital asset.

Even if Leon had preserved this argument, we find *McCarty*, *Mansell*, and their progeny

---

40. *Id.* at § 1408(c)(1). But "[t]he total amount of the disposable retired pay of a member payable [to the former spouse] . . . may not exceed 50 percent of such disposable retired pay." *Id.* at § 1408(e).

41. *Allen*, 203 P.3d at 1161.

42. *Id.* at 1162 (internal quotation marks and citations omitted).

43. 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989).

44. 221 P.3d 1006, 1011 (Alaska 2009) (internal citations omitted).

45. Leon argued: "Inasmuch as [Leon's] medical treatment is through the [V]eterans [A]dministration it would appear that the court does not have the authority to make an award based on a valuation placed on care by the Veterans Administration."

46. *Hagans, Brown & Gibbs v. First Nat. Bank of Anchorage*, 783 P.2d 1164, 1166 (Alaska 1989) (citing *Wickwire v. McFadden*, 633 P.2d 278 (Alaska 1981)).

47. *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n. 3 (Alaska 1991) (internal citations omitted).

to be of little assistance in our decision. *McCarty*, *Mansell*, and *Young* all concerned the *division* of a service member's military *pension.* The state court in *McCarty* ordered a retired military member to pay his former spouse "that portion of his total monthly pension or retirement payment which equals one-half (½) of the ratio of the total time between marriage and separation during which [the military member] was in the United States Army to the total number of years he had served with the ... Army at the time of retirement." [48] Similarly, the parties' property settlement in *Mansell* provided that the service member would pay his former spouse 50% of his total military retirement pay, including the portion of retired pay he waived in order to receive disability benefits.[49] And the trial court in *Young* awarded one-half of the marital portion of the service member's total retired pay to his former spouse, including the retired pay waived to receive disability benefits.[50] None of these scenarios is at issue in the Burts' case. The superior court did not order the division of Leon's health benefit, nor was Leon ordered to continue providing health coverage for Ann. Rather, the superior court awarded the full value of this benefit to Leon without changing any of the eligibility or coverage requirements. As Ann points out, "[t]he medical benefit remains in place and continues to be governed by its own rules unaltered by the state court."

Although neither *Mansell,* nor the Former Spouses' Protection Act, nor *McCarty* directly addresses the treatment of military health benefits in divorce, it appears that TRICARE benefits have more in common with military disposable retired pay—which courts may permissibly categorize as marital property under the Former Spouses' Protection Act [51]—than disability pay, which state courts may not characterize as marital property.[52] Any military retiree with the required years of service is eligible for both disposable retired pay [53] and TRICARE benefits,[54] but only service members who are disabled are eligible for military disability retired pay or VA disability benefits.[55] TRICARE benefits more closely resemble those pension benefits that *may* be characterized as marital property under federal law, rather than those that cannot. Given the presumption against preemption in areas traditionally left to state regulation—such as family law [56]—and given that the superior court did not divide, alter, or amend Leon's TRICARE benefit, the limitations on state court division of military retiree pensions do not lend significant support to Leon's position.

Leon also argues that the superior court's valuation "stands as an obstacle to accomplishment" of TRICARE's express purpose: to "create and maintain high morale in the uniformed services by providing an improved and uniform program of medical and dental care for members and certain former members of those services, and for their dependents." [57] But the United States Supreme Court has held: "State family and family-property law must do 'major damage' to

48. *McCarty v. McCarty*, 453 U.S. 210, 218, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981).

49. *Mansell v. Mansell*, 490 U.S. 581, 585–86, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989).

50. *Young v. Lowery*, 221 P.3d 1006, 1011 (Alaska 2009).

51. 10 U.S.C. § 1408(c) (2006); *Mansell*, 490 U.S. at 581, 109 S.Ct. 2023.

52. 10 U.S.C. § 1408(a)(4)(B), (c) (2006); *Mansell*, 490 U.S. at 581, 109 S.Ct. 2023.

53. 10 U.S.C. §§ 1406, 3911, 3914, 3917, 3918, 3929 (2006). Disposable retired pay is defined as "the total monthly retired pay to which a member is entitled" less certain exclusions. 10 U.S.C. § 1408(a)(4) (2006).

54. *See* Sharon Foster, *TRICARE Does Not Retire When You Do*, TRICARE (June 16, 2011), http://www.tricare.mil/pressroom/press_article.aspx?fid=541 ("Automatic coverage by TRICARE Standard ... occurs after retirement as long as DEERS information is current.").

55. Mark E. Sullivan, The Military Divorce Handbook 440–42 (American Bar Association, 2006).

56. *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 152, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (citing *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979)).

57. 10 U.S.C. § 1071 (2006).

'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden." [58] Leon does not explain how valuing TRICARE as a marital asset does "major damage" to the federal interest of "creat[ing] and maintain[ing] high morale in the uniformed services," and there is no evidence in the record showing how valuation of TRICARE interferes with this federal interest.

In addition, Congress has made clear that there is an important federal interest in protecting former military spouses. The legislative history of the Former Spouses' Protection Act explains that the "unique status of the military spouse and that spouse's great contribution to [the nation's] defense require that the status of the military spouse be acknowledged, supported and protected." [59] Discussing the Former Spouses' Protection Act, Representative Charles Schumer stated:

> [F]requent military moves often preclude spouses from pursuing their own careers and establishing economic independence. As a result, military spouses are frequently unable to vest in their own retirement plans or obtain health insurance coverage from a private employer. Military spouses who become divorced often lose all access to retirement and health benefits—despite a "career" devoted to the military.[60]

Allowing the superior court to consider Leon's TRICARE benefit as a marital asset best effectuates the congressional goal of protecting former military spouses while staying within the eligibility restraints Congress has set for the program. Characterizing TRICARE in this manner does not conflict with a federal interest; to the contrary, it effectuates one. We therefore hold that conflict preemption did not prevent the superior court from characterizing Leon's TRI-CARE benefit as a marital asset and awarding this benefit to Leon.

### B. The Value Placed On Leon's TRI-CARE Benefit Was Not Supported By The Record.

■ Leon argues that even if TRICARE can be marital property as a matter of law, the superior court's valuation of *his* TRI-CARE benefit was erroneous. Leon first claims the superior court should not have valued his TRICARE benefit because he intends to "drop" this coverage once his son is no longer eligible to be covered by it, so it has no value to him. But Ann's expert, Sheila Miller, testified that a person does not "drop" TRICARE; Leon may choose to stop paying for TRICARE Prime, but he will still be covered by TRICARE Standard and, starting at age 65, TRICARE for Life. The superior court recognized this, concluding: "[T]he fact that [Leon] may [choose] to use VA Medical Benefits in the future, rather than Tri–Care does not diminish the value of the medical benefits available for him to use."

Miller also testified that Leon's VA benefit is worth the same as, if not more than, his TRICARE benefit. Leon offered no evidence to counter this testimony. Therefore, even if Leon is correct that TRICARE was the wrong plan to value because he intends to use his VA health care benefit rather than TRICARE, Leon was not prejudiced by the superior court's decision to value his TRI-CARE benefit. Miller's decision to value TRICARE, and the superior court's acceptance of that decision, may have worked to Leon's benefit.[61]

■ Leon also claims the superior court erred by relying on Miller's TRICARE valuation because Miller based this valuation on Leon's projected life expectancy, which she calculated using a standard actuarial table.

**58.** *Hisquierdo*, 439 U.S. at 582, 99 S.Ct. 802 (quoting *United States v. Yazell*, 382 U.S. 341, 352, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966)).

**59.** S.Rep. No. 97–502, at 6 (1983), *reprinted in* 1982 U.S.C.C.A.N. 1596, 1601.

**60.** 128 Cong. Rec. 18, 318 (1982).

**61.** Leon claims a veteran must be disabled to receive VA health care, and therefore including his VA benefit as a marital asset would be inap-

propriate because the benefit "take[s] on the character of the disability pension," which a state court may not consider as marital property. But Leon concedes that it was not necessary for him to be disabled to qualify for VA health care at the time he enrolled. And even if Leon intends to exclusively use his VA health care benefit, his TRICARE will still be available to him.

Leon claims that *Ethelbah v. Walker*[62] requires the superior court to consider an individual's life expectancy and health status when valuing benefits. Under his interpretation of *Ethelbah*, Leon argues that the superior court should have adjusted his projected life expectancy to account for his personal health history.[63]

In *Ethelbah*, we affirmed the superior court's decision to rely on one valuation method over another, particularly because the chosen method accounted for the individual's actual health conditions.[64] But we have never required that a lifetime benefit must be valued based on the actual life expectancy of the recipient. Further, the option of valuing Leon's lifetime military health benefit based on his life expectancy as adjusted for his personal health history was not available to the superior court; Leon did not present a competing valuation that incorporated his personal medical information. Instead, he sought to discredit Miller without presenting any alternative evidence of his own. Consideration of Leon's individual health history likely would have made the superior court's valuation more precise, but we do not fault the superior court for failing to consider evidence that was not presented.[65] On this record, we do not find error in the superior court's acceptance of Miller's valuation method.

 Leon also argues that the superior court erred by adopting the valuation of his TRICARE benefit included in Miller's expert report, rather than the figure she testified to at trial. We agree. Miller's written report concluded that the marital portion of Leon's TRICARE benefit had a present value of $125,959. But Miller testified at trial that "there may [have been] an error [in her] spreadsheets," which would have caused her to "overstate the value of the present value by 10%." Miller testified that she would be more "comfortable" with a valuation of $113,363 as a result of this possible error. Given her testimony, and no other evidence to support the $125,959 valuation, it was error to use the valuation contained in Miller's written report.[66] We remand for the superior court to reconsider the value of Leon's TRICARE benefit.[67]

## C. The Facts Of This Case Warrant An Unequal Distribution.

 Leon also challenges the superior court's distribution of the marital estate as an abuse of discretion. This argument is initially premised on what Leon considers to be the superior court's erroneous treatment of his TRICARE benefit as a marital asset.[68] Because we do not agree that this characterization was erroneous, as we have explained, the first premise for Leon's challenge fails.

The superior court determined that it awarded approximately 62% of the marital estate to Ann and approximately 38% to Leon, but these percentages do not include the military and FERS pensions. When the equal division of the pensions is factored in,

62. 225 P.3d 1082, 1090 (Alaska 2009).

63. Leon also asserts that Miller erred because "her calculations had Leon living to 115 years of age." Miller's report did consider the value of Leon's TRICARE benefit if he lived to 110 years of age (not 115), but the computation worksheet used actuarial figures that gave Leon a .014% chance of surviving to 110. The corresponding value of the benefit was pegged at $0.63. We find no error in the superior court's adoption of Miller's actuarial table, probability-of-survival percentages, and expected-value calculations.

64. *Ethelbah*, 225 P.3d at 1090–91.

65. *Id.* at 1093–94 (" '[I]t is the duty of the parties, not the court, to ensure that all necessary evidence is before the court in divorce proceedings and ... a party who fails to present sufficient evidence may not later challenge the ade-quacy of the evidence on appeal.' " (quoting *Root v. Root*, 851 P.2d 67, 69 (Alaska 1993))).

66. We also note that while the superior court valued this benefit at $125,959 in its findings of fact and conclusions of law, the court's distribution spreadsheet listed the amount at $129,959. The larger figure on the spreadsheet appears to be a typographical error.

67. The superior court should also clarify on remand whether Miller used the value of TRICARE Prime or TRICARE Standard in her calculations.

68. Leon claims the superior court's distribution resulted in Ann receiving over 92% of the marital estate, but his calculation excludes the TRICARE benefit from the marital estate and it ignores that the superior court awarded him 50% of his FERS and military pensions.

Ann actually received approximately 57% of the marital estate and Leon received approximately 43% of the marital estate.

We will consider the superior court's distribution of the marital estate to be erroneous only where there was an abuse of discretion, which occurs when the superior court's decision is "arbitrary, capricious, manifestly unreasonable, or stems from an improper motive."[69]

 Once a trial court has characterized and valued the parties' marital property, it must make an equitable allocation by considering the circumstances of the parties.[70] "It is generally presumed that a 50–50 property division is the most equitable starting point,"[71] but an unequal allocation can be "condoned when it is justified by relevant factors identified in the findings of the court."[72] The statutory factors considered when dividing marital assets include: (1) length of marriage and station in life; (2) earning capacity; (3) conduct of each party during marriage including depletion of marital assets; (4) desirability of awarding the home to the party who has primary physical custody of children; (5) circumstances and necessities of each party; (6) age and health of the parties; and (7) financial circumstances of the parties, including the availability and costs of health insurance.[73]

The superior court considered and discussed each of these factors in its findings of fact and conclusions of law. The superior court found that the parties were in approximately equal health, that their ages were comparable, and that the parties' assets were primarily acquired during the marriage. The superior court awarded the family home to Ann. This was consistent with her assuming responsibility for caring for the parties' adult son, who will continue to live with Ann unless or until he becomes capable of living independently.

The superior court also observed a significant disparity between Leon's earning capacity and Ann's earning capacity. Leon was expected to continue earning over $62,000 per year from his civil service job alone. He also receives a "significant employer match on his TSP account contributions in addition to a defined benefit retirement fully funded by his employer." Ann, on the other hand, earns approximately $35,000 annually and does not have a defined retirement benefit, although she may contribute to a 401(k) that has a "lifetime cap of employer matching contributions ... of $21,500 for employees over age 50." Ann's current job does not provide medical benefits and the superior court considered Ann's expert's testimony that there is little chance of her obtaining a job that does.

The factors the superior court cited readily support an unequal distribution of the marital estate. Ann is responsible for caring for the parties' adult son while earning less income with fewer benefits than Leon. We find no error in the superior court's conclusion that the facts of this case warrant an unequal division of the marital estate. On remand, the superior court should consider whether the overall property division should be modified to accommodate for the adjusted value of Leon's military health care benefit.

## V. CONCLUSION

We AFFIRM the superior court's decision to characterize Leon's TRICARE benefit as a marital asset. We REMAND for the superior court to value Leon's TRICARE benefit and for additional proceedings consistent with this opinion.

.

---

**69.** *Morris v. Horn*, 219 P.3d 198, 203–04 (Alaska 2009) (internal quotation marks and citations omitted).

**70.** *Hansen v. Hansen*, 119 P.3d 1005, 1009 (Alaska 2005) (citing *Moffitt v. Moffitt*, 749 P.2d 343, 346 (Alaska 1988)).

**71.** *Jones v. Jones*, 666 P.2d 1031, 1034 (Alaska 1983) (citing *Wanberg v. Wanberg*, 664 P.2d 568, 574–75 (Alaska 1983)).

**72.** *Hayes v. Hayes*, 756 P.2d 298, 300 (Alaska 1988) (citing *Wanberg*, 664 P.2d at 574–75).

**73.** AS 25.24.160(a)(4); *see also Jones v. Jones*, 942 P.2d 1133, 1137 (Alaska 1997); *Merrill v. Merrill*, 368 P.2d 546, 547 n. 4 (Alaska 1962).