NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

# THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| MELVIN B. GROVE JR., | ) |
| | ) Supreme Court No. S-17388 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-13-0528 CI |
| v. | ) |
| | ) MEMORANDUM OPINION |
| CHERYL M. GROVE, | ) AND JUDGMENT* |
| n/k/a CHERYL M. ANTENUCCI, | ) |
| | ) |
| Appellee. | ) No. 1760 – April 22, 2020 |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances: Melvin B. Grove, Jr., pro se, Anchorage, Appellant. No appearance by Appellee Cheryl M. Antenucci.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

## I.    INTRODUCTION

Following our remand to the superior court to assign a value to his post-retirement military medical benefits and to finalize an equitable distribution of the marital estate, an ex-husband brings a second appeal. He argues that the superior court erred when it valued his medical benefits and in its distribution of the marital estate. Because the superior court did not err, we affirm its order.

---

\*    Entered under Alaska Appellate Rule 214.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Cheryl Antenucci and Melvin Grove married in 1986 and have no minor children. Cheryl filed for divorce in 2013. After trial in 2014 both parties appealed the superior court's order distributing their marital estate; we remanded the case to the superior court for consideration of Melvin's medical benefits. Following further proceedings, the case is now before us for a second time.

### B.    Proceedings

#### 1.    Divorce trial

At the conclusion of the 2014 trial the superior court identified, valued, and divided Melvin and Cheryl's marital property. The court determined that Cheryl's student loans taken out during the marriage were marital. The court then split the marital estate equally between Cheryl and Melvin.

The court characterized Melvin's post-retirement military medical benefits (called TRICARE) as marital but declined to assign a monetary value to the benefits, stating the expert testimony "ignore[d] the practical realities of the nature of the benefit and the difficulty of distributing a share of the benefit to the other spouse if the benefit is converted to a cash value." The court instead sought to give Cheryl "half of what Melvin has . . . but not something different" by ordering "Melvin to pay Cheryl an amount of money over time that will enable her to purchase a reasonably equivalent [health insurance] policy."

#### 2.    First appeal

Melvin raised two issues in his first appeal: the characterization of Cheryl's student loans as marital and the court's order that Melvin pay for Cheryl's health insurance instead of valuing the benefits. He did not appeal the superior court's decision to split the marital estate equally. We held that Cheryl's student loans were properly

characterized as marital.[1]

We also held that Melvin's TRICARE medical benefits were marital and that the superior court erred by not assigning a value to them.[2] We remanded to the superior court with instructions to assign a value to Melvin's TRICARE benefits;[3] we stated that "[o]nce valuation is complete the superior court 'may revisit the larger question of how best to equitably divide the estate,' while considering 'the financial condition of the parties, including the availability and cost of health insurance.' "[4]

### 3.     Evidentiary hearing on remand

Although we affirmed the superior court's determination that Melvin's TRICARE benefits were marital,[5] the superior court allowed Melvin, who represented himself, to argue on remand that his TRICARE benefits could not be included in the marital estate because he intended to waive his TRICARE coverage and elect coverage through the Veterans Administration (VA). The parties filed expert reports with competing valuations of TRICARE. After the parties' presentations, the court also considered whether the evidence amounted to changed circumstances that would necessitate a reevaluation of the equal division of the marital estate.

#### a.     TRICARE as a marital asset

Melvin is a "dually-eligible person," that is, he has healthcare coverage

---

[1]     *Grove v. Grove*, 400 P.3d 109, 112-13 (Alaska 2017).

[2]     *Id.* at 113-16.

[3]     *Id.* at 115.

[4]     *Id.* (footnote omitted) (first quoting *Hanson v. Hanson*, 125 P.3d 299, 306 n.22 (Alaska 2005); then quoting AS 25.24.160(a)(4)(D)).

[5]     *Id.* at 114.

available both through the VA and TRICARE because he has a high disability rating.[6] Veterans with high disability ratings are given preference for VA healthcare benefits; Melvin's disability rating is 80%. Melvin stated he intended to "waive" TRICARE to avoid having it valued as part of the divorce proceedings. He would then only be actively covered by VA healthcare.[7] Melvin argued that because VA coverage is a "disability benefit," and disability benefits cannot be characterized as marital, he did not have any healthcare benefits that could be characterized as marital.[8]

The superior court rejected Melvin's argument based upon our holding in *Burts v. Burts*.[9] The husband had argued that because he intended to "drop" his TRICARE coverage it had "no value."[10] We rejected the husband's argument holding that, because service members will continue to be covered for life under TRICARE, it retains value.[11] The superior court continued to characterize Melvin's TRICARE benefits as marital and proceeded to determine its value.

---

[6] *See* 38 U.S.C. § 1114 (2018) (establishing rates of disability compensation linked to a veteran's disability rating); *Shephard v. Shinseki*, 26 Vet. App. 159, 163 (2013) ("To grant an award on the basis of a veteran's service-connected disability, VA must assign a disability rating, which, in turn, it must use to set the veteran's disability compensation.").

[7] Although Melvin asserted that he would be "waiving" TRICARE coverage, he would continue to be eligible to re-enroll in coverage for the rest of his life.

[8] *See Howell v. Howell*, 137 S. Ct. 1400, 1405-06 (2017) (holding military disability benefits cannot be divided as property in a divorce).

[9] 266 P.3d 337 (Alaska 2011).

[10] *Id.* at 346.

[11] *Id.* (affirming the superior court's finding that "[t]he fact that [the husband] may [choose] to use VA Medical Benefits in the future, rather than Tri-Care does not diminish the value of the medical benefits available for him to use").

### b. Valuation of TRICARE

Both parties filed expert valuations of TRICARE coverage that had been updated since the first trial. Melvin filed his expert's report as an exhibit but did not call the expert as a witness and did not offer the report into evidence.[12] Cheryl called Sheila Miller, the same expert she had called at the first trial. Miller updated her previous report[13] and valued TRICARE at $176,951.[14] Miller critiqued the analysis in Melvin's expert's report for lowering Melvin's life expectancy for a treatable illness (sleep apnea) and including arithmetic errors. Miller's analysis incorporated data provided in a FY 2017 Congressional Report and calculated the value to Melvin based on his age. Miller testified that minor changes had been made to the TRICARE program: TRICARE Select would be replacing TRICARE Standard and, beginning in 2021, members who retired prior to 2018 would need to pay a $150 annual fee. She testified that neither change affected her valuation of the benefits.

After the hearing concluded but before the court issued its decision, Melvin received a response to a Freedom of Information Act (FOIA) request he had made earlier. The FOIA material provided the average cost per person to the government for TRICARE coverage based on a FY 2017 Congressional Report. Melvin filed a motion asking the court to review the FOIA material and assign a value to his TRICARE

---

[12]    Melvin's expert valued his TRICARE coverage at $131,115.

[13]    At the first trial Miller calculated Melvin's TRICARE coverage under two scenarios: using her normal methodology and using the Department of Defense Office of the Actuary's cost inflation assumption. She valued his coverage at $249,162 and $239,445 respectively.

[14]    The updated report, in response to Melvin's report, computed the value of the benefits beginning in March 2016 to account for the fact that Cheryl continued to benefit from TRICARE coverage until that date.

benefits based on the per person cost in the material. Cheryl responded with an affidavit from Miller stating she had taken the information from the Congressional Report into consideration in her valuation.[15]

In February 2019 the court issued its order valuing the TRICARE medical benefits.[16] It largely accepted Miller's valuation. After subtracting an amount for "guaranteed insurability" because "Miller did not explain her methodology of valuation sufficiently," the court valued the TRICARE benefits at $164,486.

### c. Estate division

After this case was remanded, Melvin filed a motion requesting "clarification as to whether the court can consider something other than an equal division of the marital estate" on remand. The superior court ruled that it would consider the division of the marital estate if Melvin "prove[d] sufficient changed circumstances" since the first trial. But Melvin did not present any evidence of changed circumstances despite several invitations from the court during the hearing. Nor did he argue during the hearing that adding the value of TRICARE to the marital estate was such a significant addition that the court should reconsider its equal distribution. Because Melvin did not present any evidence that would require a reevaluation of the estate's equitable division, the court maintained its equal distribution, including the value of Melvin's TRICARE.

---

[15] After the court issued its order with its finding on TRICARE's valuation, Melvin filed a motion to strike Miller's affidavit because it was unsigned. Cheryl then submitted a signed version of Miller's affidavit. The superior court denied Melvin's motion. Melvin argues on appeal that the court erroneously relied upon the unsigned affidavit, but because a signed version was filed before the court made its decision, the court did not err.

[16] The order also denied Melvin's motion requesting discovery of Cheryl's financial information and granted Melvin's motion to supplement the record with his late-filed FOIA response.

Melvin appeals the superior court's decision rejecting his argument that TRICARE was no longer part of the marital estate, valuing TRICARE at $164,486, and equally dividing it as it had the remainder of the estate.

## III.   STANDARD OF REVIEW

"There are three basic steps in the equitable division of marital assets: (1) deciding what specific property is available for distribution, (2) finding the value of the property, and (3) dividing the property equitably."[17]   "In the first step, '[t]he characterization of property as separate or marital may involve both legal and factual questions' ";[18] we review the superior court's legal conclusions de novo and its factual findings for clear error."[19]   "In the second step, the valuation of assets 'is a factual determination that we review for clear error.' "[20]   "Clear error exists when we are 'left with a definite and firm conviction that the superior court has made a mistake.' "[21]  "The trial court's factual findings enjoy particular deference when they are based 'primarily on oral testimony, because the trial court, not this court, judges the credibility of witnesses and weighs conflicting evidence.' "[22]  "We review the trial court's third step,

---

[17]     *Beals v. Beals*, 303 P.3d 453, 458 (Alaska 2013).

[18]     *Id.* at 459 (alteration in original) (quoting *Odom v. Odom*, 141 P.3d 324, 330 (Alaska 2006)).

[19]     *Engstrom v. Engstrom*, 350 P.3d 766, 769 (Alaska 2015).

[20]     *Id.* (quoting *Beals*, 303 P.3d at 459).

[21]     *Ethelbah v. Walker*, 225 P.3d 1082, 1086 (Alaska 2009) (quoting *Josephine B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 174 P.3d 217, 220 (Alaska 2007)).

[22]     *Sheffield v. Sheffield*, 265 P.3d 332, 335 (Alaska 2011) (quoting

(continued...)

the equitable allocation of property, for an abuse of discretion."[23]  "An abuse of discretion occurs if the court considers improper factors, fails to consider relevant statutory factors, or assigns disproportionate weight to some factors while ignoring others."[24]

## IV.  DISCUSSION

### A.  The Superior Court Did Not Err By Rejecting Melvin's Argument That TRICARE Was No Longer A Marital Asset Available For Distribution.

Melvin argued on remand, and in this appeal, that the superior court should not have characterized his TRICARE benefits as marital.  But we previously held that they were marital and remanded only for the superior court to value those benefits and equitably distribute the marital estate.[25]  In addition, Melvin's argument that his TRICARE benefits had no value and should not be considered marital was foreclosed by our decision in *Burts*.[26]  The superior court did not err by rejecting Melvin's argument.

---

[22]  (...continued)
*Josephine B.*, 174 P.3d at 222).

[23]  *Engstrom*, 350 P.3d at 769 (quoting *Beals*, 303 P.3d at 459).

[24]  *Id.* (quoting *Hansen v. Hansen*, 119 P.3d 1005, 1009 (Alaska 2005)).

[25]  *Grove v. Grove*, 400 P.3d 109, 113-14, 116 (Alaska 2017).

[26]  *Burts v. Burts*, 266 P.3d 337, 341-46 (Alaska 2011) (holding that husband's TRICARE benefits were a marital asset for purposes of property division).  Melvin urges us to overrule *Burts* due to changes in the TRICARE program since his first trial and appeal.  We decline to do so.  Minor changes (a new name — TRICARE Select instead of TRICARE Standard — and an annual fee for coverage) do not change the nature of TRICARE as a marital asset available for distribution.

**B.    The Superior Court Did Not Clearly Err In Its Valuation Of The TRICARE Benefits.**

Melvin argues the superior court clearly erred by crediting Miller's valuation of TRICARE over his expert's valuation. But Melvin's expert's report was not in evidence.[27] In addition, following Miller's testimony, which included a detailed critique of the other expert's calculations, the court found Miller's valuation of TRICARE more accurate than the one proposed by Melvin's expert. The superior court's findings are supported by the record and are not clearly erroneous.[28]

Melvin also argues the superior court erred by not relying on information from the FOIA response. But the court accepted Miller's statement in her affidavit filed in response to Melvin's FOIA motion that she had already taken the information into account in her report. Because the FOIA response did not provide any information not already incorporated into Miller's calculations, the court did not err by admitting the FOIA response into evidence but rejecting Melvin's argument that the evidence should affect the TRICARE valuation.

---

[27]    *See Paula E. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 276 P.3d 422, 430 (Alaska 2012) ("[U]nadmitted exhibits are to be afforded no weight." (interpreting Alaska R. App. P. 210(a))); *see also Chugach Electric Ass'n v. Northern Corp.*, 562 P.2d 1053, 1061 (Alaska 1977) ("We do not believe that the trial court should have considered the [document], since, although it had been marked for identification prior to the commencement of the trial, it was not introduced into evidence nor was reference made to it at trial.").

[28]    Melvin also argues that a portion of the value of TRICARE should have been allocated to Cheryl. This argument lacks merit. The superior court accurately noted that Miller took into account the year that both Melvin and Cheryl were covered by TRICARE and subtracted that amount from the total value.

## C. The Superior Court Did Not Abuse Its Discretion By Dividing The Marital Estate Equally.

"Trial courts exercise broad discretion in the division of marital assets."[29] The trial court's factual findings, on which it bases the division, "enjoy particular deference when they are based 'primarily on oral testimony, because the trial court, not this court, judges the credibility of witnesses and weighs conflicting evidence.' "[30] The superior court's allocation of property "will not be disturbed unless it is clearly unjust."[31] And "[e]qual division of property is presumptively valid."[32]

Neither party challenged the superior court's equal division of the marital estate in the first appeal. On remand, the superior court was instructed to assign a value to the TRICARE benefits and authorized to "revisit the larger question of how best to equitably divide the estate,"[33] after it considered "the financial condition of the parties, including the availability and cost of health insurance."[34] Because Melvin did not offer any evidence of changed financial conditions nor evidence regarding the availability or

---

[29] *Tybus v. Holland*, 989 P.2d 1281, 1284 (Alaska 1999) (citing *Johns v. Johns*, 945 P.2d 1222, 1224 (Alaska 1997)).

[30] *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014) (quoting *Sheffield v. Sheffield*, 265 P.3d 332, 335 (Alaska 2011)).

[31] *Moffitt v. Moffitt*, 749 P.2d 343, 346 (Alaska 1988) (quoting *Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983)).

[32] *McLaren v. McLaren*, 268 P.3d 323, 332 (Alaska 2012) (citing *Elliott v. James*, 977 P.2d 727, 730 (Alaska 1999)); *see also McDougall v. Lumpkin*, 11 P.3d 990, 993 (Alaska 2000) ("An equitable property division is presumptively fifty-fifty, absent any statutory or equitable factors justifying a different division.").

[33] *Grove v. Grove*, 400 P.3d 109, 116 (Alaska 2017) (quoting *Hanson v. Hanson,* 125 P.3d 299, 306 n.22 (Alaska 2005)).

[34] *Id.* (quoting AS 25.24.160(a)(4)(D)).

cost of health insurance, there was no reason for the court to reconsider its equitable distribution of the estate. The superior court therefore did not abuse its discretion by allocating Melvin's TRICARE benefits in the same equitable manner as the rest of the marital estate.

## V. CONCLUSION

The superior court's valuation and distribution of Melvin's TRICARE benefits is AFFIRMED.