YVONNE S., Appellant,

v.

WESLEY H., Appellee.

No. S–13562.

Supreme Court of Alaska.

Jan. 14, 2011.

Yvonne S., pro se, Anchorage, Appellant.

Wesley H., pro se, Anchorage, Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

## OPINION

CARPENETI, Chief Justice.

## I. INTRODUCTION

A divorced mother appeals the denial without a hearing of her motion to modify a two-year-old custody order. The parties' daughter, 16 at the time of the hearing, strongly preferred the current arrangement in which her father has primary physical custody. Because the mother's allegations, even if true, did not demonstrate a change of circumstances warranting a modification of custody, we affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

Yvonne and Wesley have one child, Allison,[1] born September 22, 1993. When they divorced in 1996, the court ordered joint legal custody of Allison and granted Yvonne primary physical custody.[2] The court granted Wesley regular visitation on weekends and holidays.

In May 2008, when Allison was 14 years old, Wesley moved for primary physical custody of Allison. Allison submitted an affidavit expressing a strong desire to live with her father. Yvonne opposed the motion and the court held a hearing. Allison testified that she wanted to live with her father because he was supportive, they shared interests and communicated well, and he trusted her more than her mother did. In addition, Allison testified that she experienced a lot of stress living with her mother. For instance, Allison testified that she was hurt by her mother's excessive criticism of her weight and appearance. Allison also testified that she had a difficult relationship with her stepfather.

The court found that Allison was mature, made good decisions, had a healthy self-image, did not use drugs or alcohol, did well in

school, and had not had trouble with the law. The court also found that the criticism Allison perceived from her mother was problematic and that some conflicts existed between Allison and her stepfather. The court found that Allison clearly wanted to live with her father, that she had legitimate reasons for her preference, that she was not being unduly influenced by either parent, and that she was of sufficient capacity and maturity to warrant consideration of her custody preference. The court also discussed each of the statutory factors for determining a child's best interests.[3] Weighing these factors, the court held that Allison's preference, her age, and the problems at her mother's house constituted a change in circumstances which warranted a change in custody. The court granted Wesley primary physical custody, giving Yvonne regular visitation. The court noted that Allison's preference was the "most significant factor" influencing its decision. Yvonne did not appeal this decision.

On June 3, 2009, when Allison was nearly 16 years old, Yvonne moved to for shared physical custody. Yvonne alleged several changed circumstances which she asserted warranted the change, including that Allison's grades and health had deteriorated under Wesley's care. Yvonne attached to her motion Allison's report cards and medical records, as well as several pages of emails between herself and Wesley. Wesley opposed the motion and Allison submitted an affidavit expressing her strong desire to remain living with her father. It does not appear that Yvonne submitted a reply to Wesley's opposition.

On June 22, 2009, the superior court denied Yvonne's motion to change physical custody without a hearing, stating that Yvonne "has not demonstrated a substantial change in circumstances." Yvonne appeals. Both Yvonne and Wesley appeared pro se during the custody proceedings discussed above, and

---

1. We use pseudonyms to protect the family's privacy.

2. In 2000, Wesley unsuccessfully moved for primary physical custody of Allison. As part of those proceedings, Wesley unsuccessfully moved

to recuse the judge. Wesley appealed, and this court affirmed the superior court's decision to deny recusal.

3. *See* AS 25.24.150(c) (excerpted *infra* at note 12).

also appear pro se before this court.[4]

## III. LEGAL FRAMEWORK AND STANDARD OF REVIEW

■■■ The question before us is whether Yvonne's allegations, taken as true, demonstrate a significant or substantial change in circumstances relative to the circumstances that existed at the time of the prior custody order, and whether those allegations, if true, would warrant a change in custody.[5] If the answer to both questions is yes, Yvonne is entitled to evidentiary proceedings and an opportunity to establish whether, in light of the changed circumstances, "it is in the child's best interest to alter the existing custodial arrangement."[6] Whether a moving party has made a prima facie showing of changed circumstances warranting a hearing is a question of law that we review de novo.[7]

We review allegations of multiple changed circumstances in the aggregate to determine whether modification would be warranted if the allegations were proven true at a hearing.[8] We will affirm the denial of a motion to modify custody without a hearing if, in our independent judgment, either (1) "the facts alleged in the motion would not warrant a change in custody,"[9] or (2) the "allegations of changed circumstances are convincingly refuted by competent evidence"[10] and the moving party then fails to indicate the ability to "produce admissible evidence of specific facts rebutting that evidence."[11]

■■■ In determining the best interests of a child for custody purposes, a court should consider several factors, including the child's preference if the child is of sufficient age and capacity to form a preference.[12] In particu-

---

4. In July and August 2009, Yvonne and Wesley expressed disagreement to this court about the proper scope of the record on appeal. On September 1, 2009, we issued an order clarifying that the appeal is limited to Yvonne's contention that the trial court erred in denying, without a hearing, her motion to modify custody. Thus, while the most recent custody trial (the 2008 trial in which Wesley was awarded primary physical custody) was relevant, several other proceedings that Yvonne sought to make part of the record on appeal were irrelevant and would not be considered. These included the March 2007 trial resulting from Wesley's unsuccessful motion to modify custody and three domestic violence proceedings dating back to 1994.

Because our order arose from Yvonne's motion to provide CDs instead of written hearing transcripts, the order technically applies only to the hearings from these proceedings. However, multiple documents from the irrelevant proceedings are still included in Yvonne's excerpt and repeatedly cited to in her brief. Consistent with the reasoning in our September 2009 order, we have disregarded this material in considering this appeal.

5. *Maxwell v. Maxwell*, 37 P.3d 424, 425 (Alaska 2001) ("The superior court may deny a hearing on a motion to modify custody if it considers the motion and finds it plain that the facts alleged in the moving papers, even if established, would not warrant a change in custody.") (internal citations omitted); *Valentino v. Cote*, 3 P.3d 337, 340 (Alaska 2000); *see also J.L.P. v. V.L.A.*, 30 P.3d 590, 595 (Alaska 2001).

6. *Iverson v. Griffith*, 180 P.3d 943, 946 (Alaska 2008) (quoting *Maxwell*, 37 P.3d at 426); AS 25.20.110(a) ("An award of custody of a child ... may be modified if the court determines that a change in circumstances requires the modifica-

tion of the award and the modification is in the best interests of the child."); *see also Maxwell*, 37 P.3d at 426 ("The moving parent bears the burden of making a prima facie showing of a substantial change of circumstance as a threshold matter."); *Valentino*, 3 P.3d at 340 ("[A] custody modification is valid if (1) the non-custodial parent establishes that a change in circumstances has occurred; and (2) the modification is in the best interests of the child.").

7. *Barile v. Barile*, 179 P.3d 944, 946 (Alaska 2008); *Maxwell*, 37 P.3d at 425.

8. *Barile*, 179 P.3d at 946.

9. *Iverson*, 180 P.3d at 946.

10. *Id.*

11. *C.R.B. v. C.C.*, 959 P.2d 375, 382 (Alaska 1998), *overruled on other grounds by Evans v. McTaggart*, 88 P.3d 1078, 1084–85 (Alaska 2004).

12. AS 25.24.150(c)(3). In addition, the court should consider:

(1) the physical, emotional, mental, religious, and social needs of the child;
(2) the capability and desire of each parent to meet these needs;
...
(4) the love and affection existing between the child and each parent;
(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
(6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child ...

lar, "courts should place weight upon an older child's preferences [because], while a young child's preferences are often unreliable because he or she can be easily influenced by the behavior of his or her parents, 'a relatively mature teenager's reasoned preference is not so lightly to be disregarded.' " [13]

## IV. DISCUSSION

**The Superior Court Did Not Err In Denying Yvonne's Motion To Modify Custody Without A Hearing.**

■ Although Yvonne raises ten points on appeal, her position can be summarized as follows: Yvonne argues that the superior court erred in denying her motion for changed custody without a hearing because, in her view, her allegations show a substantial change in circumstances which potentially warrants a change in custody.[14] Yvonne alleges eight changed circumstances discussed below. Wesley responds that the superior court correctly determined that Yvonne had not demonstrated a substantial change in circumstances. Specifically, Wesley points out that Allison's preference was a major factor in the court's 2008 decision awarding him primary physical custody, and that Allison's preference has not changed.

■ As a preliminary matter, we note that Yvonne has included in the excerpt and relied on in her brief a large amount of material that is outside the proper scope of our review. The relevant inquiry here is whether Yvonne has demonstrated a change in circumstances "relative to the facts and circumstances that existed at the time of the prior custody order that [she] seeks to modify." [15] Yvonne seeks to modify the custody order issued in August 2008. Thus, for this appeal we will not consider material relating to events before August 2008 other than for comparison purposes.[16]

As noted above, we review allegations of multiple changed circumstances in the aggregate.[17] Therefore we will first discuss each of Yvonne's allegations and the corresponding evidence, and then determined whether, in the aggregate, the allegations merited a hearing in the superior court.

First, Yvonne alleges that Allison's health has deteriorated under her father's care. Yvonne points to a January 2009 physician's report indicating that Allison had a hormone imbalance causing irregular menses, probably as a result of weight gain, and recommending that Allison lose 15 pounds. Yvonne alleges that Wesley does not provide healthy food or exercise opportunities to allow Allison to reach this goal.[18] Yvonne does

---

(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;
(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;
(9) other factors that the court considers pertinent.

**13.** *Valentino v. Cote,* 3 P.3d 337, 340–41 (Alaska 2000) (citing *Veazey v. Veazey,* 560 P.2d 382, 390 n. 11 (Alaska 1977), *overruled by statute on other grounds* ); *see also Maxwell v. Maxwell,* 37 P.3d 424, 426 (Alaska 2001) (affirming denial of custody modification hearing where teenagers expressed strong preference to stay with custodial parent and there were no signs of abuse or neglect).

**14.** In Yvonne's fourth through tenth points on appeal, she argues that the superior court gave too much or too little weight to various factors in determining the child's best interests. However, because the superior court denied Yvonne's motion on the ground that she had not shown a substantial change in circumstances, the court

did not actually weigh the statutory factors or make a determination about Allison's best interests. Thus, we understand Yvonne to be arguing that this court in its independent judgment should conclude that the facts alleged in her motion potentially warrant a change in custody.

**15.** *J.L.P. v. V.L.A.,* 30 P.3d 590, 595 (Alaska 2001).

**16.** This decision tracks the reasoning in this court's September 2010 order regarding the scope of the record on appeal. *See supra* note 4.

**17.** *See supra* note 8 and accompanying text.

**18.** Wesley and Allison dispute this in their affidavits. Both state that they exercise together. Wesley says they "eat well and have a good diet." Allison says her mother's infrequent visits make her a poor judge of Allison's diet while at her father's. Further, Allison's affidavit indicates that she and her mother have a difficult relationship on the subject of exercise, which is unsurprising given the weight-related criticism Allison experienced from her mother while they lived together.

acknowledge, however, that a May 2009 doctor's report showed that Allison had lost some weight and was on the "right track."

Second, Yvonne alleges that Allison lives largely unsupervised in one-half of Wesley's duplex, allowing her to socialize excessively and irresponsibly. Yvonne's assertions on this point are either unsupported (because Yvonne provides no record support or cites to non-supportive material) or supported only by inadmissible evidence.[19] Yvonne also asserts that Wesley has a history of objecting to or refusing to pay for Allison's doctor visits, but she does not point to any admissible evidence.[20] Rather, the record shows that Wesley has attended at least one doctor's visit with Allison since assuming custody. Although she has abandoned the claim on appeal, Yvonne did allege in the superior court that Wesley prevented Allison from getting a flu shot. However, Allison stated in her affidavit that she did not want a flu shot even though Wesley would have permitted it. Yvonne provides no evidence refuting this.

Third, Yvonne alleges that Allison's grades in school deteriorated under her father's care. Allison's report cards show that she had As and Bs in the year before she went to live with Wesley and had a mixture of As, Bs, Cs, and Ds in the year after. On the positive side, Allison's report cards show regular attendance, enrollment in several honors classes, and consistent As in "Concert Orchestra." In his affidavit, Wesley said he shared Yvonne's concerns and was making efforts to help Allison improve. Allison stated that her father often helped her with her homework and that her grades were lower because classes at her new school were more challenging.

Fourth, Yvonne alleges that Allison has a new interest in learning Russian and that spending more time with her mother, a native speaker, would be beneficial. Allison responded that she has not been able to learn Russian from her mother after 15 years.

Fifth, Yvonne alleges on appeal that Wesley has "manipulated" Allison and therefore her custody preference should be given little weight. Yvonne did not make this allegation below, so it is waived.[21] Further, Yvonne made this allegation in the July 2008 custody trial and the superior court rejected it, finding that Allison's preference had not been unduly influenced by her father.

Sixth, Yvonne alleges that Wesley has interfered with her relationship with Allison. Yvonne did not make this allegation below; thus it is waived.[22] Further, Yvonne supports this allegation primarily by citing events that occurred before July 2008 and therefore are irrelevant to this appeal.[23]

---

**19.** For example, Yvonne supports her allegation that Allison "has parties at 'her' house and spends overnights [with] friends often at the expense of her grades" by citing a few emails between herself and Wesley. Yvonne's emails are inadmissible hearsay, and Wesley's statements, though potentially non-hearsay party admissions, do not support Yvonne's allegations. *See* Alaska Evidence Rules 801(d)(2), 802.

Although Wesley and Allison do not explicitly deny Yvonne's allegation that they live in different sides of a duplex, they disagree with Yvonne that Allison is unsupervised. Wesley stated in his affidavit that he discusses homework with Allison and fixes meals for her daily. Allison stated in her affidavit that her father once grounded her and prevented her from attending parties after she received a bad grade. Yvonne has not produced admissible evidence of specific facts rebutting Wesley and Allison's affidavits.

Yvonne also alleges that Allison's living area is dirty and in disarray. Because Yvonne did not make this allegation in the superior court, it is waived. *See Peterson v. Swarthout*, 214 P.3d 332, 339 (Alaska 2009) (claims not raised below are waived).

**20.** Yvonne also claims on appeal, without support, that Wesley let Allison dye her hair and make inappropriate internet postings. She did not make these allegations below. Accordingly, they too are waived. *Peterson*, 214 P.3d at 339.

**21.** *Id.*

**22.** *Id.*

**23.** The only relevant events are those that occurred after August 2008 when the prior custody order was issued, and before June 2009, when Yvonne brought this appeal. *See J.L.P. v. V.L.A.*, 30 P.3d 590, 595–96 (Alaska 2001) (relevant inquiry is whether party has shown that change in circumstances occurred since prior custody order).

The only recent development Yvonne now alleges is that Wesley disparages her to Allison, thus harming the mother-daughter relationship. For support, she gives two examples that are unsupported by the record and cites to additional unsupported assertions from her December 2008

Seventh, Yvonne alleges that her husband recently moved to Los Angeles for work. Yvonne argues that because Allison's difficult relationship with her stepfather was one basis for the superior court's prior custody decision, his recent move is a substantial change in circumstances which warrants a modification in custody.

Eighth, Yvonne alleges that she has recently moved into an apartment in Allison's school district. Yvonne did not make this allegation below, and therefore it is waived.[24] Further, Yvonne does not explain why her relocation warrants a change in custody, and it does not appear that Yvonne's previous distance from Allison's school district was a barrier to shared custody.[25]

Considering Yvonne's multiple allegations in the aggregate[26] and accepting them as true, we conclude that Yvonne has not demonstrated a substantial or significant change in circumstances which would potentially warrant a change in custody.[27] Although Allison was diagnosed with a medical condition while under her father's care, it is undisputed that she has obtained follow-up treatment and made progress in following the doctor's recommendations while under her father's care. Many of Yvonne's other allegations are relatively minor or are outside the range of our review.

Two of Yvonne's allegations do warrant closer consideration: that her husband—whose presence was a partial basis for the prior custody order—is no longer in Alaska, and that Allison's grades dropped significantly after the change in custody. In particular, the marked drop in Allison's academic performance gives us pause, as a parent's ability to provide for a child's educational needs can be an important factor to consider in determining the child's best interests.[28]

If Allison were younger or did not express a strong preference, we might conclude that a hearing was necessary given these changes. However, Allison turned 17 in September 2010 and she has expressed a strong preference to live with her father. In 2008, when she was 14, the superior court heard extensive testimony from Allison and determined that she was mature, made good decisions, and had legitimate reasons for her custody preference. Yvonne has not made any allegations (such as drug abuse, risky behavior, or mental illness) that now call Allison's maturity into question. Moreover, Wesley concedes that Allison's grades have declined but, as Allison explained, that the work is more challenging at her new school, and Yvonne has not contested the factual basis for this reasonable explanation. In light of this, and in light of this court's precedent giving greater weight to the custody preferences of older

---

pleading in an ancillary proceeding relating to visitation and child support. Affidavits from both Wesley and Allison in that case denied Yvonne's allegations.

**24.** *See Peterson,* 214 P.3d at 339 (claims not raised below are waived).

**25.** Yvonne makes two additional arguments which completely lack merit. First, she argues that the superior court should have given more weight to a 2007 child custody investigator's report. This report was done as part of a proceeding completed before the custody order which Yvonne seeks to modify, and thus the report is largely irrelevant now. *See J.L.P.,* 30 P.3d at 595–96.

Second, Yvonne argues that the superior court should have considered Wesley's history of domestic violence. However, Yvonne cites only material from between 1993 and 2000, well before the date of the 2008 custody order. *See id.* The superior court in the 2008 custody trial found that domestic violence was not an issue

and Yvonne does not cite any incidents after that time. In addition, Yvonne raised neither of these issues below, so they are waived. *See Peterson,* 214 P.3d at 339.

**26.** *Barile v. Barile,* 179 P.3d 944, 946 (Alaska 2008).

**27.** *See Maxwell v. Maxwell,* 37 P.3d 424, 425 (Alaska 2001) ("The superior court may deny a hearing on a motion to modify custody if it considers the motion and finds it plain that the facts alleged in the moving papers, even if established, would not warrant a change in custody.") (internal citations omitted); *J.L.P.,* 30 P.3d at 595; *Valentino v. Cote,* 3 P.3d 337, 340 (Alaska 2000).

**28.** *See Michele M. v. Richard R.,* 177 P.3d 830, 834–35 (Alaska 2008); *Williams v. Ross,* Mem. Op. & J. No. 1361, 2006 WL 830611, at *3 (Alaska, Mar. 29, 2006) (considering parent's ability to provide for child's educational needs under AS 25.24.150(c)(1)–(2)).

children,[29] we conclude in our independent judgment that Yvonne's allegations, even if established as true, do not demonstrate a significant or substantial change in custody that would warrant a custody modification. Therefore, the superior court did not err in denying Yvonne a hearing on her motion to modify custody.

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the superior court's decision.

---

**29.** *See, e.g., Maxwell,* 37 P.3d at 425; *Valentino,*  3 P.3d at 340–41.