Rebecca L. SHEFFIELD, Appellant,

v.

Michael T. SHEFFIELD, Appellee.

No. S–14220.

Supreme Court of Alaska.

Dec. 9, 2011.

John C. Pharr, Law Offices of John C. Pharr, Anchorage, for Appellant.

Andrew L. Josephson, The Law Offices of G.R. Eschbacher, Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

Michael and Rebecca Sheffield of Unalaska divorced in 2009. Because Michael planned to move to Virginia in 2010, he sought school-year custody of the couple's two sons. The superior court ruled that the children's best interests supported school-year custody with Michael in Virginia. Rebecca appeals, arguing that the superior court placed too much emphasis on the older son's preference to live in Virginia with his father, especially in relation to the geographical stability that would result if the children remained in Unalaska. We conclude that the superior court's consideration of the older child's preference was appropriate and that the superior court ade-quately considered the other statutory factors. We therefore affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

Michael and Rebecca Sheffield were married on May 16, 1992 in Virginia. Both grew up in Virginia and both have family in the area. Michael and Rebecca have two sons: Davis, born in 1996, and Jacob, born in 2000. In 2003, the Sheffields moved from Virginia to Unalaska so that Rebecca could take a job with the Alaska Department of Environmental Conservation. After the couple moved to Unalaska, Michael obtained work with the city fire department. Michael and Rebecca initially planned to stay in Alaska for only two years, but the couple remained in Alaska until after their dissolution in 2009.

Michael and Rebecca separated in 2008 and filed a petition for dissolution of marriage on October 5, 2009. During the intervening 17 months of their separation, they shared custody. Until September 2008, Davis and Jacob lived with Michael "full time and visited with their mom." After that, Michael and Rebecca had a shared custody arrangement. In the dissolution petition, the couple agreed to shared legal and physical custody. They agreed to have the children spend the first part of the week with Rebecca and the second part with Michael. The parenting plan appended to the petition included a provision on relocation:

> If either parent intends to move from the Dutch Harbor area, the moving parent shall provide at least 120 days written notice to the other parent. Neither parent shall remove or cause Davis and Jacob to be removed permanently from the Dutch Harbor area without first securing the written consent of the other parent or a court order. If the parents are unable to come to a new mutually satisfactory parenting plan as a result of any such moves, the parents shall seek mediation. Should mediation not remedy the problem, the parents shall seek court intervention.

A decree of dissolution was issued in December 2009.

Michael attended his father's funeral in Virginia in early 2010. He emailed Rebecca in March 2010 to tell her that he planned to marry Holly, a woman he had known from his childhood in Virginia. He explained that the "thought of leaving Dutch [Harbor] ma[de][him] physically ill" but that he needed to be closer to his extended family, especially his mother. Michael and Holly married in December 2010. Holly has two teenage children from a previous marriage.

Michael moved to modify physical custody in June 2010 and sought to relocate to Virginia with the children "as soon as possible." Michael filed a motion to have a custody investigator, Pamela Montgomery, interview the children to determine their preference regarding the proposed move. He also sought to waive the mediation provision in their custody agreement. Rebecca opposed both the motion to modify custody and the motion to appoint a custody investigator. In her opposition, Rebecca argued that the children knew "only the rosy, unrealistic account [of the move] being given by their father."

The superior court denied Michael's motions to have the children interviewed and to waive mediation. The parties tried to mediate their case but were unable to resolve their dispute, and the case was scheduled for trial. On November 23, 2010, Rebecca agreed to have the children interviewed but only by a "qualified counselor" based in Unalaska. Rebecca proposed Donna Henry, but Michael objected, asserting that Henry was "a social friend" of Rebecca's. Michael proposed three other individuals whom he asserted were "unconnected to the parties." He then filed a motion to have the superior court select one of the parties' nominees because there was "essentially no chance that the parties will be able to agree" on someone. On December 17, 2010, the superior court selected one of Michael's nominees, Janet Giles, to interview the children. Giles interviewed Jacob and Davis on January 11, 2011

and faxed a letter to the superior court that day stating that both children preferred to live with Michael. She also faxed a copy of the letter to Michael's attorney but not to Rebecca's attorney.

The superior court held an evidentiary hearing in January 2011, and Rebecca's attorney obtained a copy of Giles's letter from Michael's attorney on January 12, the first day of the hearing. Rebecca's attorney contacted Giles on the afternoon of January 12 in order to interview her, but Giles was not available at the proposed time. Rebecca moved to disqualify Giles on January 13. The superior court denied the motion but ruled that Giles would "not be permitted to testify" until she made herself available for Rebecca's attorney to interview her. Rebecca's attorney was never able to reach Giles, who was unavailable, and Giles did not testify. The superior court struck Giles's letter from the record.

Following the three-day hearing, the superior court found that Michael's reasons for moving to Virginia were legitimate. Because the move out of state constituted a substantial change of circumstances as a matter of law, the court analyzed the best interest factors listed in AS 25.24.150 and determined that these factors supported awarding Michael custody of the children during the school year in Virginia.[1] The superior court emphasized the quality of the schools and the extracurricular opportunities available in Virginia, along with the older child's preference for Virginia. The court also noted Rebecca's ability to rearrange her work to spend more time with the children in the summer. The superior court ruled that Michael would bear two-thirds of the cost of the children's travel to and from Unalaska. The superior court concluded that the children would finish the 2010–2011 school year in Unalaska before moving to Virginia and that they would return to Unalaska to spend the summers and some holidays with Rebecca.

---

**1.** The superior court considered the following statutory factors: the physical, emotional, mental, religious, and social needs of the children; the older child's preference; continuity; and Rebecca's scheduling flexibility during the summer. The superior court found that most of the factors, including the parents' ability to meet the chil-

dren's needs; the love and affection existing between the children and each parent; and the ability of each parent to provide a close and continuing relationship between the other parent and the child, did not favor one parent over the other. The court found no evidence of domestic violence or substance abuse.

## III. STANDARD OF REVIEW

 Alaska Statute 25.20.110(a) provides that an "award of custody of a child or visitation with the child may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child." We will reverse a custody determination order "only if the record shows an abuse of discretion or if controlling factual findings are clearly erroneous."[2] An abuse of discretion in child custody awards occurs when "the trial court considers improper factors, fails to consider statutorily mandated factors, or gives too much weight to some factors."[3] Factual findings are clearly erroneous if a review of the record leaves this court "with the definite and firm conviction that the superior court has made a mistake."[4] The trial court's factual findings enjoy particular deference when they are based "primarily on oral testimony, because the trial court, not this court, judges the credibility of witnesses and weighs conflicting evidence."[5]

## IV. DISCUSSION

### A. The Superior Court Did Not Err In Giving Significant Weight To Davis's Preference.

 Rebecca argues that the court gave too much weight to 14–year–old Davis's preference to move to Virginia with his father.

She argues that the superior court did not have enough information about Davis's preference to determine whether it was reliable. Specifically, Rebecca alleges an "absence of . . . information about how Davis reached a preference" and argues that Michael may have pressured Davis.

Alaska Statute 25.24.150(c)(3) instructs the superior court to consider "the child's preference if the child is of sufficient age and capacity to form a preference."[6] We have noted that as children "get older, the trial court will be more inclined to respect their preference."[7] And we have held that a teenager's preference can be a deciding factor because, while a young child's preferences are often unreliable, "a relatively mature teenager's reasoned preference is not so lightly to be disregarded."[8] We have also, however, affirmed superior court decisions finding a teenager's preference to be unreliable because it was manipulated or unduly influenced by a parent.[9]

The superior court found that the record "made it clear that Davis does have a preference to go to Virginia." Although it decided not to admit Giles's report, the superior court recognized that there was not "a whole lot of dispute about [Davis's] preference," and Rebecca's counsel did not dispute that characterization. Moreover, Rebecca testified that Davis would be "disappoint[ed]" to remain in Unalaska.[10]

**2.** *Long v. Long*, 816 P.2d 145, 150 (Alaska 1991) (internal citations omitted).

**3.** *Id.*

**4.** *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 207–08 (Alaska 2000).

**5.** *Josephine B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 174 P.3d 217, 222 (Alaska 2007).

**6.** *See also Yvonne S. v. Wesley H.*, 245 P.3d 430, 432 (Alaska 2011) ("In determining the best interests of a child for custody purposes, a court should consider several factors, including the child's preference if the child is of sufficient age and capacity to form a preference.").

**7.** *William P. v. Taunya P.*, 258 P.3d 812, 816 (Alaska 2011) (citing *Valentino v. Cote*, 3 P.3d 337, 340–41 (Alaska 2000) ("[T]rial courts should place weight upon an older child's preferences.")); *see also Harrington v. Jordan*, Mem.

**8.** *Yvonne S.*, 245 P.3d at 433 (quoting *Valentino*, 3 P.3d at 340–41).

**9.** *See Thomas v. Thomas*, 171 P.3d 98, 105 (Alaska 2007) (stating that children's preferences are unreliable if based upon "improper influence" by a parent); *Jenkins v. Handel*, 10 P.3d 586, 591 (Alaska 2000) (finding the preference of 13– and 15–year–old children to be unreliable due to the influence of a sexual relationship with an older man and by siblings and adults within the community).

**10.** The superior court commended the parents for showing "a great deal of love and affection" for the children in not having Davis testify about his preference, which would have been "unduly stressful" on the children.

Op. & J. No. 877, 1998 WL 34347990, at *3 (Alaska, Mar. 18, 1998); *Veazey v. Veazey*, 560 P.2d 382 n. 11 (Alaska 1977) (overruled by statute on other grounds).

Rebecca also acknowledged Davis's desire to move to Virginia in an affidavit and noted that he felt "the schools were better and he wanted a change." Thus, the superior court's finding that Davis preferred to move to Virginia with his father was supported by the record, and there is no evidence that Davis's opinion was immature or unduly influenced by his father. The record suggests that Davis is interested in engineering and believes that the education system in Virginia might offer him more opportunities.

■ In *Yvonne S.*, we considered a case where a daughter went to live with her father, who then moved out of Alaska.[11] While with her father, the daughter's grades dropped significantly.[12] Nevertheless, we concluded that the daughter's "strong preference to live with her father" outweighed any change in circumstance.[13] The 14–year–old daughter's preference was the key factor, and the mother had "not made any allegations (such as drug abuse, risky behavior, or mental illness) that ... call[ed the daughter's] maturity into question."[14] Similarly, Rebecca has not provided any reason to question Davis's maturity, nor has she pointed to evidence in the record suggesting Davis's preference was a result of pressure.[15] The superior court heard testimony from three of Rebecca's witnesses that Davis is "positive and outgoing," a "bright kid [and] a leader." As children "get older and more mature, their reasoned preference regarding custody will be entitled to 'substantial reli-

ance' and is 'not so lightly to be disregarded.' "[16] Thus, where both parents are capable and neither living situation would be detrimental to the child, an older child's preference should be honored.[17] The superior court did not abuse its discretion by assigning significant weight to Davis's preference.

**B. The Superior Court Adequately Considered Geographical Stability.**

■ Rebecca asserts that the superior court did not adequately consider the stability that staying in Unalaska would provide for the children. A superior court cannot "ignor[e]" statutory factors, but it has "considerable discretion in determining the importance of each statutory factor in the context of a specific case and is not required to weigh the factors equally."[18] In this case, the superior court found that "each home has the ability to provide a great deal of stability." The superior court found that the greater degree of geographic stability offered by Unalaska was outweighed by Davis's preference for Virginia and by Rebecca's flexibility to rearrange her work schedule in the summers.

We have explained that the stability factor is not limited to geographic stability and continuity, but also encompasses the "totality of the circumstances [the children] were likely to encounter in their respective parents'

---

**11.** 245 P.3d 430, 435 (Alaska 2011).

**12.** *Id.*

**13.** *Id.*

**14.** *Id.*

**15.** Cf. *Jenkins v. Handel*, 10 P.3d 586, 590–91 (Alaska 2000) (rejecting two teenagers' preference to live with their mother because it was motivated by a "romantic involvement" with an older man which the mother did not discourage, as well as a desire for "greater social and recreational opportunities").

**16.** *William P. v. Taunya P.*, 258 P.3d 812, 819 (Alaska 2011) (quoting *Valentino v. Cote*, 3 P.3d 337, 341 (Alaska 2000)).

**17.** We recognize the need for sensitivity on the part of trial judges to avoid unintentionally placing children in the middle of a custody battle.

Helping parents to understand that custody decisions are made by the court and not their children may take some pressure off of an older child who has expressed a preference to live with a parent. We also recognize that there may be situations where the trial court will determine that a parent has coerced or manipulated a child into expressing a preference to live with that parent. *See, e.g., Thomas v. Thomas*, 171 P.3d 98, 105 (Alaska 2007) (concluding that children's testimony appeared to be "swayed by [their father's] influence" and remanding for superior court to consider whether older children's preference to live with their father was improperly influenced by their father).

**18.** *Williams v. Barbee*, 243 P.3d 995, 1005 (Alaska 2010) (quoting *Barlow v. Thompson*, 221 P.3d 998, 1005 (Alaska 2009)) (internal quotation marks omitted).

homes."[19] Here, the superior court did consider the importance of stability and continuity in its extensive findings. The superior court observed that "a greater degree of stability for the youth ... would be obtained by remaining in Unalaska," but it also recognized that "the other part of the statute looks at the desirability of maintaining continuity, and ... Davis's preference is to go and spend time in Virginia." The superior court concluded that Davis's "mental needs are likely to be better met in the Virginia school system, given his academic and sports interests." The superior court determined that the children should move to Virginia only after finishing the school year in Unalaska to avoid causing them additional stress. In examining the stability factor, the superior court also found that Rebecca had greater flexibility in the summer and could spend more time with the children during their school vacation in Unalaska each summer.

The superior court explained that the potential for either parent to be an excellent parent and to provide a good environment for the children made its decision more difficult. The superior court carefully considered the evidence as it weighed the relevant factors, and its decision was not an abuse of discretion.

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the superior court's decision.

---

19. *Evans v. Evans*, 869 P.2d 478, 482 (Alaska 1994); *see also Rooney v. Rooney*, 914 P.2d 212, 217 (Alaska 1996) ("Continuity and stability for a child come not only from staying in the same house, or going to the same school. Consideration should also be given to social and emotional factors such as who the primary care-giver was for the child and whether the child would be separated from siblings or family members if he was placed with one parent rather than another.").