NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JOHN THORNLEY, | ) |
| Appellant, | ) Supreme Court No. S-18153 |
| | ) |
| | ) Superior Court No. 3AN-11-09416 CI |
| v. | ) |
| | ) MEMORANDUM OPINION |
| JEAN MILLER, | ) AND JUDGMENT[*] |
| Appellee. | ) |
| | ) No. 1923 – October 5, 2022 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Adolf V. Zeman, Judge.

Appearances: Rob Sato, Sato Law, LLC, Anchorage, for Appellant. Notice of Non-Participation filed by Lindsey N. Dupuis, Law Office of Lindsey N. Dupuis, LLC, Anchorage, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

## I.     INTRODUCTION

A father moved to obtain sole legal custody to make education decisions for his son, alleging that the mother, who had sole legal custody to make those decisions, was violating the custody order and causing a decline in the child's academic performance. The superior court denied his motion without a hearing, concluding that he did not allege a substantial change of circumstances. The father appeals the denial of

---

[*]     Entered under Alaska Appellate Rule 214.

a hearing. We affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

John Thornley and Jean Miller divorced in 2012. The superior court approved a custody agreement that established shared physical and legal custody of their two children. The parties have frequently returned to court to address custody and visitation disputes; decisionmaking about the children's education has been a recurring point of contention. In 2017 their son was diagnosed with a learning disability that affects his reading fluency and comprehension, which led to more disagreements about the best approach to his special education needs. Because the parents were unable to agree and their disputes were affecting their son's education, in July 2018 the superior court awarded Jean sole legal custody to make education decisions for the child.

In the order granting Jean sole legal custody over education decisions, the superior court found that "John . . . [was] uncooperative and unwilling to work with Jean . . . regarding the child's educational needs." The order directed that "Jean . . . make an effort to work with John . . . in making joint decisions," such as sharing "information on educational issues, her decision, and proposed plan of action." However, the court gave Jean sole legal authority "to make education decisions including choice of school" and "all additional services for [the child's] educational needs, including tutoring[,]" "neurological testing, counseling, medication which would help . . . focus and learning, and extracurricular activities during the school year." The order allowed John "access to all records," but otherwise he was required to go through Jean to communicate with providers and he could not interfere with Jean's final decisions.

In April 2021, John moved to obtain sole legal custody over the child's education. He alleged that Jean had failed to make education decisions in the child's best interests, leading to the child's "regression" academically, as shown by the child's reading speed tests. The superior court denied the motion in July 2021, determining that

John had not shown a substantial change in circumstances required to hold a custody modification hearing.

John appeals the denial of a modification hearing, arguing that the trial court erred by concluding he did not show a substantial change in circumstances.[1]

## III. STANDARD OF REVIEW

"To determine 'whether a party is entitled to a hearing on a motion to modify custody, we review the record and arguments de novo to determine whether the party alleged facts which, if true, demonstrate a substantial change in circumstances.' "[2] "In so doing, we take the moving party's allegations as true."[3] "We use our independent judgment to review the denial of a modification motion without a hearing; we will affirm the denial if 'the facts alleged, even if proved, cannot warrant modification, or if the allegations are so general or conclusory, and so convincingly refuted by competent evidence, as to create no genuine issue of material fact requiring a hearing.' "[4]

## IV. DISCUSSION

Alaska Statute 25.20.110(a) provides that "[a]n award of custody of a child or visitation with the child may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child." A parent's "motion to modify custody triggers a right to an evidentiary hearing only if the moving party 'make[s] a prima facie showing of a

---

[1] Jean filed a notice of non-participation in this appeal.

[2] *Hope P. v. Flynn G.*, 355 P.3d 559, 564 (Alaska 2015) (quoting *Collier v. Harris* (*Collier I*), 261 P.3d 397, 405 (Alaska 2011)).

[3] *Collier I*, 261 P.3d at 405.

[4] *Abby D. v. Sue Y.*, 378 P.3d 388, 391 (Alaska 2016) (quoting *Bagby v. Bagby*, 250 P.3d 1127, 1128 (Alaska 2011)); *see also Yvonne S. v. Wesley H.*, 245 P.3d 430, 432 (Alaska 2011).

substantial change in circumstances affecting the child[]'s welfare.' "[5] "The required change in circumstance must be significant or substantial, and must be demonstrated relative to the facts and circumstances that existed at the time of the prior custody order that the party seeks to modify."[6]

"Substantial change in circumstances" is not defined by statute,[7] so a court must engage in a "heavily fact-intensive" analysis to determine whether there has been a substantial change of circumstances.[8] We have explained that "[a] change in circumstances is unlikely to be substantial enough to 'overcome our deep reluctance to shuttle children back and forth . . .' unless the change affects the child[]'s welfare and 'reflect[s] more than mere passage of time.' "[9] And "[i]f a number of circumstances are alleged to have changed, the superior court is required to consider them in the aggregate to determine whether they amount to a substantial change."[10]

John argues that his motion made a prima facie showing of a substantial change in circumstances that entitled him to an evidentiary hearing. In the motion John

---

[5] *Hope P.*, 355 P.3d at 565 (quoting *Schuyler v. Briner*, 13 P.3d 738, 742 (Alaska 2000) (first alteration in original)).

[6] *Heather W. v. Rudy R.*, 274 P.3d 478, 481-82 (Alaska 2012) (quoting *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000)).

[7] An exception is if the court finds that a crime involving domestic violence has occurred since the last custody or visitation award, it is automatically considered a change of circumstances. AS 25.20.110(c).

[8] *Collier v. Harris* (*Collier II*), 377 P.3d 15, 22 (Alaska 2016). We have determined that, as a matter of law, a parent's relocation out of state is a substantial change in circumstances. *Id.*

[9] *Hope P.*, 355 P.3d at 565 (third alteration in original) (quoting *C.R.B. v. C.C.*, 959 P.2d 375, 381 (Alaska 1998)).

[10] *Collier II*, 377 P.3d at 22.

alleged that Jean failed to provide their son with necessary educational services and failed to provide John with important information or allow him to be involved in the child's education. John also alleged that Jean provided false information to the child's teachers about John's involvement in the child's education and that Jean gave false information to the teachers and John about the child's progress. John alleged that as a result the child's reading proficiency "regressed." John concluded in that motion that these changes are substantial because of their impact on the child's academic performance. He reiterates that conclusion in his appeal brief and contends that the child's regression places "him at risk of academic failure and a lifetime of literacy issues."

Because of education's importance to a child's welfare,[11] we have affirmed substantial change of circumstances findings when a child's educational setbacks are attributable to the custodial parent's actions.[12] Violations of a custody order can also amount to a substantial change of circumstances.[13] But when determining if a parent

---

[11]  *See, e.g.*, *Yvonne S. v. Wesley H.*, 245 P.3d 430, 435 (Alaska 2011) (explaining that child's "marked drop in . . . academic performance gives us pause" in custody analysis since it reflects "parent's ability to provide for a child's educational needs"); *Michele M. v. Richard R.*, 177 P.3d 830, 834-35 (Alaska 2008) (upholding determination that child's educational needs weighed heavily in favor of custody modification because child's performance in school suffered due to absences caused by mother, reflecting her inability to meet child's educational needs).

[12]  *Gault v. Gault*, No. S-12071, 2006 WL 3387268, at *2 (Alaska Nov. 22, 2006) (affirming superior court's determination that child's "severe drop in grades" and mother's lack of understanding and capacity to address the issue constituted substantial change of circumstances).

[13]  *See Kelly v. Joseph*, 46 P.3d 1014, 1018 (Alaska 2002) (father's breach of visitation provisions of custody agreement was change of circumstances). *But see Abby D. v. Sue Y.*, 378 P.3d 388, 397-98 (Alaska 2016) (explaining that violation of custody
(continued...)

seeking modification of custody has alleged facts amounting to a substantial change of circumstances, we look at whether the superior court had previously considered the alleged facts and circumstances.[14] If the court considered the allegations in a previous custody order, those same allegations typically do not amount to a substantial change of circumstances in a subsequent motion to modify.[15] If the motion alleges new facts, we consider whether the allegations are specific and not rebutted by clear evidence.[16]

Here, the superior court had previously considered most of the parents'

---

[13]  (...continued)
orders may constitute change of circumstances but, depending on seriousness, narrower remedy such as enforcement or modification of visitation orders may be more appropriate than modification of custody); *Rainer v. Poole*, 510 P.3d 476, 482-84 (Alaska 2022) (noting alleged violations of custody orders may constitute grounds for modification if "continuous, repetitious, or egregious" but requiring courts to first consider lesser sanctions to ensure compliance (quoting *Georgette S.B. v. Scott B.*, 433 P.3d 1165, 1170 (Alaska 2018))).

[14]  *Heather W. v. Rudy R.*, 274 P.3d 478, 481-82 (Alaska 2012) ("The required change in circumstance . . . must be demonstrated relative to the facts and circumstances that existed at the time of the prior custody order that the party seeks to modify." (quoting *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000))); *see also Rainer*, 510 P.3d 476, 482-83 (Alaska 2022) (explaining that relevant comparison is between current circumstances and those existing at the time of prior custody order, although "[s]ufficiently persistent or severe violations can justify modification even if the parent's conduct does not differ substantially from" prior conduct).

[15]  *Gratrix v. Gratrix*, 652 P.2d 76, 78, 83 (Alaska 1982) (concluding superior court's custody modification was abuse of discretion because child's "poor grades and attendance record" that father attributed to mother had been considered at prior custody hearings and thus did not constitute substantial change of circumstances).

[16]  *See, e.g.*, *Yvonne S.*, 245 P.3d at 432-34 (noting that evidence submitted by mother moving to obtain custody rebutted her assertion that child's health and academic performance suffered under father's care).

disagreements about the child's education.[17] The court had awarded Jean sole legal custody in July 2018 *because of* the frequent disagreements over the child's needs, his performance, and alternative approaches to schooling. The court had specifically provided Jean with power to choose schools, tutoring, and other supplementary educational needs in response to the parents' inability to agree.

The allegations in John's most recent motion to modify the legal custody order regarding education arose out of the continuing problems the court had already considered. Although the problems were compounded by circumstances out of Jean's control, due to both the pandemic and the difficulties of adapting the child's suddenly-changed educational format to his special needs,[18] John's allegations do not amount to a prima facie showing of substantial changes since the last custody hearing.

In addition, some of John's claims that may not have been specifically considered previously by the superior court were rebutted by the evidence in the record, including his own affidavits. Although John claimed that Jean failed to enroll the child in summer school, as agreed, John did not dispute that Jean registered the child for online

_____

[17] Jean moved in 2014 and in 2017 for sole legal custody, premised on many of the same parental cooperation problems regarding the child's education. For instance, in 2017 Jean alleged the child needed a change in learning environment to improve his academic performance but John refused to allow changes. John accused Jean of acting without informing him properly about educational services for their son. The court noted that John seemed averse to even admitting their son had a learning disability, but determined the parents should take more time to receive testing results and evaluate their son's options.

[18] John's arguments in many ways appear to be requests for the court to determine what form of schooling is best for their son. But we have explained that the judiciary is not best placed to make such decisions, though it is appropriate for it to determine who should make those decisions. *Bird v. Starkey*, 914 P.2d 1246, 1250 n.6 (Alaska 1996). In this case, the superior court identified Jean as the proper decisionmaker to act in the child's best interests.

summer school.[19] And although John alleged Jean did not inform him that she planned to continue homeschooling their son, John admitted that Jean told him she would homeschool through the third quarter of the school year "and then reevaluate." The record shows that Jean generally communicated her intentions; a few lapses in communication typically do not amount to a "substantial change of circumstances."[20] Likewise, John's allegation that Jean failed to access special education resources for their son is belied by his acknowledgment that she enrolled the child in special education through his homeschool program.

John pointed to three of the child's reading speed assessments to prove his claim that the child was regressing. He argued that the actual assessments showed poorer performance than what was reported in the child's individualized education plan and claimed Jean and her mother, who helped with schooling and conducted his reading assessments, misrepresented the child's performance and did not address his academic decline.

It is not the role of the court to make a credibility determination at this stage in the proceedings, but it can determine if the evidence provided was sufficient to create

---

[19] John claims the program was "for kids looking for a challenge" rather than those who might be struggling with certain curriculum areas. Jean explained she had used certain other programs that John wanted but that their son did not benefit from, so she tried this online program.

[20] *See Collier I*, 261 P.3d 397, 406 (Alaska 2011) (acknowledging that "continual violation" of court orders may warrant evidentiary hearing or modification, but isolated "instances" might not rise to substantial change of circumstances). We note the custody order states that Jean "should" communicate with John, reflecting the superior court's determination that the parents' inability to cooperate required it to give Jean the power to make education decisions, even if she was unable to communicate with John about them. The court previously found that John's " 'need' . . . to review data . . . [is] just a form of control . . . on [his] terms."

a genuine issue of material fact.[21] The court concluded that John's allegations did not create an issue of material fact. John focused on a single perceived discrepancy in the information relating to the child's academic performance but did not provide any other evidence that the child was "regressi[ng]."[22] Given other evidence in the record demonstrating that the child was progressing,[23] we conclude that the evidence overall indicated no substantial change of circumstances. John's allegations about the child's educational needs and the parents' inability to cooperate to meet them had been previously considered by the superior court, most recently when it awarded Jean sole legal custody to make education decisions. John failed to make a prima facie showing of a substantial change of circumstances. The superior court did not err by declining to schedule an evidentiary hearing before denying John's motion to modify legal custody.[24]

---

[21] *Id.* at 404-05 (explaining that granting or denying custody modification motion without hearing "is akin to making a determination on summary judgment" and thus it is improper to make credibility determinations except in certain circumstances such as party's repetitious filing over short time without new allegations).

[22] While the evidence submitted shows some discrepancy in actual and reported reading speeds, the evidence was sparse. None of the other reading assessments were submitted, and those that were showed that the child's reading speed fluctuated.

[23] For instance, the child's special education teacher noted "steady progress" on his individualized education plan goals, which are not solely based on reading speed but also various assessment areas such as reading comprehension. The teacher also explained that the more recent reading data is based on grade level curriculum, whereas earlier assessments were based on a lower "instructional level" curriculum, which could reasonably account for any decreases in the child's scores.

[24] *See* AS 25.20.110(a) (requiring court to enter reasons on the record when a parent opposes modification of custody and court grants modification); *Hanson v. Hanson*, 36 P.3d 1181, 1188 (Alaska 2001) (holding AS 25.20.011(a) does not require reasons on the record when court denies motion to modify custody); *see also John B. v. Alisa B.*, No. S-17633, 2021 WL 487121, at *3, *7 (Alaska Feb. 10, 2021) (affirming

(continued...)

## V. CONCLUSION

We AFFIRM the superior court's denial of a custody modification hearing.

---

(...continued)
superior court's denial of motion to modify custody without making findings).