NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KENNETH S., | ) | |
| | ) | Supreme Court No. S-15624 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-11-09382 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| BEULAH E., | ) | AND JUDGMENT[*] |
| | ) | |
| Appellee. | ) | No. 1552 – August 26, 2015 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: Kenneth S., pro se, Anchorage, Appellant. No appearance by Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

## I. INTRODUCTION

Parents entered into a settlement agreement for shared custody of their child. The mother later requested primary physical custody based upon her planned move out of state, alleging multiple pre-settlement domestic violence incidents by the father. Without any additional notice to the pro se father that it would do so, the trial court considered those incidents in its ruling. A presumption against awarding custody to the father was applied, and the mother was granted custody. The father appeals,

---

[*]      Entered under Alaska Appellate Rule 214.

arguing that the trial court erred procedurally and substantively. We affirm the trial court in all respects, adopting its decision and attaching it as an appendix.

## II. FACTS AND PROCEEDINGS

Most facts and proceedings underlying this custody modification determination are outlined in the trial court's July 2, 2014 decision.

On July 14 Kenneth S.[1] appealed that decision to us. Although Beulah E. had filed a motion for costs and attorney's fees on July 8, Kenneth did not respond to the motion, and his notice of appeal and statement of points on appeal did not mention it. Instead, on the same day Kenneth appealed to us, he also filed motions in the trial court to stay enforcement of the judgment and the not-yet approved attorney's fees pending appeal and for approval of a supersedeas bond. On August 1 the trial court granted Beulah's motion for attorney's fees and denied Kenneth's two motions.

On appeal Kenneth argues the trial court erred by: (1) failing to order an independent investigation of the child's mental state; (2) failing to inform him that pre-settlement agreement domestic violence claims would be considered and then actually considering those claims; (3) finding he committed domestic violence against Beulah, and, in this context, considering his practice of carrying firearms; (4) failing to consider multiple best interests factors when awarding custody; (5) ordering him to attend a batterers' invention program; (6) giving Beulah authority to move the child to "any place of her choosing"; (7) limiting his communication with the child and Beulah; and (8) ordering him to pay half of Beulah's attorney's fees.

Beulah filed no response.

---

[1]  We use initials in lieu of last names to protect the parties' privacy.

## III. STANDARD OF REVIEW

A trial court's factual finding will be set aside only when it is "clearly erroneous" — meaning "based on the entire record, we are left 'with a definite and firm conviction that a mistake has been made, even though there may be evidence to support the finding.' "[2] "We afford particular deference to factual findings based primarily on oral testimony, because [a] trial court is better suited to judge the credibility of witnesses and weigh conflicting evidence."[3] Likewise, "we will generally accept [a] trial court's determination of the credibility of witnesses since it saw and heard the witnesses first hand."[4]

"Trial courts have broad discretion [when] determining child custody."[5] "We will find that a trial court abused its discretion [in making a custody determination] if it 'considers improper factors . . ., fails to consider statutorily mandated factors, or assigns disproportionate weight to particular factors while ignoring others.' "[6] We also review for abuse of discretion the terms of a visitation order[7] and a trial court's

---

[2]   *Kristina B. v. Edward B.*, 329 P.3d 202, 207 (Alaska 2014) (alteration omitted) (quoting *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005)).

[3]   *Id.*

[4]   *McLaren v. McLaren*, 268 P.3d 323, 331 (Alaska 2012).

[5]   *Kristina B.*, 329 P.3d at 207 (quoting *Ebertz*, 113 P.3d at 646) (internal quotation marks omitted).

[6]   *Id.* (alterations omitted) (quoting *Ebertz*, 113 P.3d at 646).

[7]   *See Houston v. Wolpert*, 332 P.3d 1279, 1282, 1285 (Alaska 2014) (applying abuse of discretion standard to visitation schedule); *Yelena R. v. George R.*, 326 P.3d 989, 1002-03 (Alaska 2014) (reviewing visitation terms for abuse of discretion).

procedural decisions.[8] "A [trial] court abuses its discretion by making a decision that is 'arbitrary, capricious, [or] manifestly unreasonable, or [that] stems from an improper motive.' "[9]

"Whether [a trial] court applied the correct legal standard is a question of law . . . we review de novo . . . ."[10] Likewise, "[a] constitutional issue presents a question of law which we review de novo . . . ."[11]

## IV. DISCUSSION

### A. The Trial Court Did Not Err With Respect To Its Custody Determination.

#### 1. Custody investigation

Pursuant to Alaska Civil Rule 90.6(a), "the court may appoint an expert . . . to investigate custody . . . and visitation issues and provide an independent opinion concerning the child's best interests." The decision whether to appoint such an investigator is discretionary.[12] Kenneth argues the trial court erred by declining to order an independent investigation after he "informed the court that the child was experiencing separation anxieties and grief loss," but because no admissible evidence of the child's

---

[8]     *McLaren*, 268 P.3d at 332.

[9]     *Morris v. Horn*, 219 P.3d 198, 203-04 (Alaska 2009) (alterations omitted) (quoting *Collins v. Arctic Builders*, 957 P.2d 980, 981 (Alaska 1998)).

[10]     *Yelena R.*, 326 P.3d at 996 (quoting *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011)) (internal quotation mark omitted).

[11]     *Debra P. v. Laurence S.*, 309 P.3d 1258, 1260 (Alaska 2013) (quoting *Lashbrook v. Lashbrook*, 957 P.2d 326, 328 (Alaska 1998)) (internal quotation marks omitted).

[12]     *See Yelena R.*, 326 P.3d at 1001.

alleged mental health issues was presented during the hearing, the court did not abuse its discretion by declining to order independent investigation of the child's mental state.

### 2. Advice to a pro se litigant

Pro se litigants' due process rights in some instances entitle them to procedural explanations from the trial court,[13] but not to explanations of substantive law.[14] Far from it being error for a trial court to fail to inform a pro se litigant of substantive law, *advising* such a litigant regarding substantive law may in some instances be error.[15] Kenneth's argument that the trial court erred by failing to adequately explain to him substantive law regarding pre-settlement domestic violence allegations in child custody modification determinations therefore fails.

---

[13] *See Genaro v. Municipality of Anchorage*, 76 P.3d 844, 846 (Alaska 2003) ("We have made clear that a trial judge has an obligation to inform a pro se litigant of the proper procedure for the action he or she is obviously attempting to accomplish.") (quoting *Coffland v. Coffland* 4 P.3d 317, 321 (Alaska 2000)) (internal quotation marks omitted).

[14] *McLaren v. McLaren*, 268 P.3d 323, 334 (Alaska 2012) ("Requiring the superior court to inform pro se litigants of all the relevant substantive law would put a trial judge in the precarious position of acting as attorney for an unrepresented party . . . .").

Kenneth argues that both his due process rights and his Sixth Amendment right to counsel entitled him to judicial explanation of substantive law. The Sixth Amendment right to counsel applies only to criminal defendants, not civil litigants. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."). We therefore address only his due process argument.

[15] *McLaren*, 268 P.3d at 334 ("[A]lthough . . . trial judges should take limited steps to mitigate the difficulty of representing oneself, a trial court may not compromise its impartiality by saving a litigant from the litigant's choice of a lawyer, including when a litigant chooses to represent himself.").

### 3. Domestic violence findings

Kenneth's argument that the trial court erred by finding he committed domestic violence against Beulah hinges on that court's credibility determinations: Every time the court concluded that an act of domestic violence occurred, it found Beulah's version of events credible and Kenneth's denial not credible. The court went so far as to find that Kenneth perjured himself by denying he had threatened Beulah with a gun. Reviewing the entire record, we conclude that the trial court did not clearly err in making these credibility determinations.

In finding credible Beulah's description of Kenneth threatening her with a gun, the trial court noted that her description was "consistent with [Kenneth's] admitted practice of carrying a handgun." Kenneth argues the trial court violated his constitutional right to bear arms by considering his practice of carrying firearms. But a person's right to bear arms under both the U.S. Constitution and the Alaska Constitution is not unlimited.[16] In particular, Kenneth does not have the right to use his weapons as the court found he did — wantonly terrorizing others.[17] The trial court did not violate Kenneth's rights by considering all properly admitted evidence before it.

---

[16] *See District of Columbia v. Heller*, 554 U.S. 570, 595, 626 (2008) ("[W]e do not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation . . . ." (emphasis in original)); *Stiner v. State*, Mem. Op. & J. No. 6105, 2014 WL 5421223, at *4 (Alaska App. Oct. 22, 2014) ("[N]either the Second Amendment of the United States Constitution nor article I, section 19 of the Alaska Constitution protect the . . . unlawful threat of force . . . .").

[17] *See, e.g.*, *State v. Stroud*, 683 P.2d 459, 468 (Mont. 1984) ("[T]he right to bear arms conveys no right or privilege to enter a residence without permission [and] threaten its unarmed occupants . . . .").

### 4. Application of AS 25.24.150(g)

The trial court properly considered pre-settlement-agreement domestic violence accusations when determining whether to apply AS 25.24.150(g)'s rebuttable presumption that a parent with a history of domestic violence may not be awarded custody. The legal basis for this decision is fully explained in the trial court's decision. The trial court also properly did not consider AS 25.24.150(c)'s best interests factors after finding that the presumption applied and had not been rebutted — in such a situation the parent with a history of perpetrating domestic violence may not be awarded custody.[18]

### 5. Summary

After carefully reviewing applicable law and the facts of this case, we conclude that the trial court committed no error in making its custody determination.

### B. The Trial Court Did Not Abuse Its Discretion With Respect To The Custody Modification Order's Terms.

### 1. Batterers' intervention program

After the trial court found by a preponderance of the evidence that Kenneth had committed three domestic violence crimes against Beulah within the prior five years, but still granted him visitation, the court had the discretion to order that he complete a

---

[18] *See* AS 25.24.150(g); *Stephanie F. v. George C.*, 270 P.3d 737, 754 (Alaska 2012) ("If the superior court decides . . . that the presumption has been rebutted, the final step in the path charted by the legislature will be consideration of the best interest[s] factors in AS 25.24.150(c) to make a final custody decision."); *Weinberger v. Weinmeister*, 268 P.3d 305, 309-10 (Alaska 2012) ("[T]he path charted in AS 25.24.150(g)-(h) is not optional. . . . Because [the mother] failed to rebut the statutory presumption, the superior court erred by awarding custody to [her] . . . ." ); *Wee v. Eggener*, 225 P.3d 1120, 1125 (Alaska 2010) ("If the presumption is not overcome, AS 25.24.150(g) prohibits awarding the perpetrating parent any type of custody. . . . [W]ithout a finding that [the father] overcame the presumption against custody, he has no right to any type of custody.").

batterers' intervention program.[19] Especially considering that Kenneth did not take responsibility for his crimes against Beulah, the court did not abuse its discretion by ordering that he complete a batterers' intervention program.

## 2. Custody and visitation terms

The trial court likewise did not abuse its discretion by giving Beulah the authority to move the child to "any . . . place of her choosing." Kenneth has lost no right that he had after the unrebutted presumption against awarding him custody was in place. The trial court had no discretion to award him custody.[20] The order includes terms protective of Kenneth's rights in the event Beulah relocates: It requires that Beulah keep Kenneth apprised of her telephone number and address, and that Beulah and Kenneth split equally the transportation costs of his court-ordered visitation with the child.

Visitation terms adequately supported by the record are within the trial court's discretion.[21] A trial court is accorded broad discretion in setting visitation terms

---

[19] AS 25.20.061("If visitation is awarded to a parent who has committed a crime involving domestic violence, against the other parent . . . within the five years preceding the award of visitation, the court may set conditions for the visitation, including . . . [that] the perpetrator shall attend and complete . . . a program for the rehabilitation of perpetrators of domestic violence . . . [and] any other condition necessary for the safety of the child, the other parent, or other household member.").

[20] *See supra* note 18. The modification order invites Kenneth to move to modify custody as soon as he completes a batterers' intervention program. At that time Kenneth may ask the court to revisit the custody term giving Beulah the authority to move the child to "any . . . place of her choosing."

[21] *See Green v. Parks*, 338 P.3d 312, 315-16 (Alaska 2014) ("Although the court did not explain its allocation, there is support in the record for the requirement that Jason pay all visitation expenses."); *Harris v. Governale*, 311 P.3d 1052, 1060 (Alaska 2013) (noting that a trial court has "broad discretion" in fashioning visitation); *see also Yelena R. v. George R.*, 326 P.3d 989, 1002 n.36 (Alaska 2014) ("[W]here a trial court (continued...)

when in the past five years one parent committed a domestic violence crime against the other.[22] But a court *must* place severe visitation restrictions on a parent with a "history of perpetrating domestic violence" unless it makes certain findings.[23] The trial court concluded that Kenneth had committed three domestic violence crimes against Beulah in the five years preceding the order. But after making the required findings — including that Kenneth did not "pose a danger of mental or physical injury" to the child — the court granted Kenneth unsupervised visitation. The court's finding that Kenneth posed no danger to the child does not mean it must ignore Kenneth's past domestic violence crimes against Beulah. The court noted Kenneth's "controlling attitudes" and "efforts to reunite with [Beulah] when she did not wish to do so." Given Kenneth's history it was not an abuse of discretion to set limitations on his communications with Beulah.[24]

---

[21] (...continued)
makes the required findings, whether those findings support a particular restriction on visitation is left to the trial court's discretion.").

[22] *See supra* note 19.

[23] AS 25.24.150(j) ("If the court finds that a parent has a history of perpetrating domestic violence under (g) of this section, the court shall allow *only supervised visitation* by that parent with the child, conditioned on that parent's participating in and successfully completing an intervention program for batterers, and a parenting education program, where reasonably available, *except* that the court may allow unsupervised visitation *if it is shown by a preponderance of the evidence* that the violent parent has completed a substance abuse treatment program if the court considers it appropriate, is not abusing alcohol or psychoactive drugs, does not pose a danger of mental or physical harm to the child, and unsupervised visitation is in the child's best interests." (emphasis added)).

[24] We note that the communication limitations ordered are not extreme; Kenneth may not call Beulah on the telephone, except in emergencies, but he has not yet lost the right to other communications.

Some limit on the time of day, length, and frequency of Kenneth's entitlement to calling the child while she is in Beulah's custody is necessary to effectuate the limitation on Kenneth calling Beulah. It is not difficult to imagine avenues by which Kenneth could use an unlimited calling privilege with the child to circumvent the order that he not disrupt Beulah's daily life by calling her.[25] The trial court did not abuse its discretion by setting the terms of Kenneth's entitlement to telephone time with the child.

Likewise the court did not abuse its discretion by ordering that Beulah be given the first winter break and Kenneth the second. Each choice has its own positive and negative ramifications, and neither choice is obviously more appropriate than the other.

**C. Kenneth's Appeal Of The Attorney's Fees Order Is Not Properly Before Us.**

Kenneth argues the trial court erred by ordering him to pay half of Beulah's attorney's fees. This argument is not properly before us because Kenneth failed to raise it in the trial court.[26]

## V. CONCLUSION

For these reasons the trial court's decision is AFFIRMED.

---

[25] Kenneth does not appear to recognize that this "limitation" actually is *protective* of his right to daily speak on the telephone with the child and does not limit him from calling more often or for longer periods if he and Beulah agree that it is appropriate. Kenneth also does not appear to recognize that the same provision will apply to Beulah when he has custody of the child during summer breaks and alternating winter break.

[26] *See Thea G. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 291 P.3d 957, 969 (Alaska 2013); *McGraw v. Cox*, 285 P.3d 276, 281 (Alaska 2012); *Burts v. Burts*, 266 P.3d 337, 344 (Alaska 2011).

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

KENNETH S.,                          )
                                     )
                  Plaintiff,         )
       v.                            )
                                     )
BEULAH E.,                           )
                                     )
                  Defendant.         )    Case No. 3AN-11-09382 CI

## MODIFICATION ORDER[1]

On April 30, 2014, Beulah E. moved to modify the child custody, visitation, and support order set forth in the Findings of Fact and Conclusions of Law entered by this court on January 20, 2012. Kenneth S. filed an opposition to the motion to modify on May 12, 2014. The court held a modification hearing on June 20 and June 30, 2014. Kenneth appeared in person and was not represented by counsel. Beulah appeared in person and was represented. The court heard the testimony of the parties and their witnesses and reviewed all admitted exhibits. Based on a preponderance of the evidence, the court makes the following findings of fact and conclusions of law as a result of the June 20 and June 30, 2014, hearing and issues the following orders.

### FINDINGS OF FACT

1.      The court (Pro Tem Superior Court Judge Alex Swiderski) entered findings of fact and conclusions of law and a custody decree on January 20, 2012. The findings of fact and conclusions of law and custody decree were based on a settlement

---

[1]      This decision has been edited to conform to the technical rules of the Alaska Supreme Court, to eliminate identifying information, and to clarify minor inconsistencies with the record.

agreement between the parties. The custody decree provided for joint legal and shared physical custody of a daughter, the parties' only child together.

2. At the hearing approving the settlement agreement, the court asked the parties if they were threatened in any way in entering into the settlement agreement. However, the court never asked the parties whether there was any domestic violence in the relationship. Thus, the issue of domestic violence before and after the date of the custody decree has never been litigated.

3. Beulah now wishes to move to Pennsylvania with the child to be with Robert, her fiancee. Robert relocated from Alaska to Pennsylvania in approximately November 2013. Robert is a former Marine who is now employed as a logistics coordinator for federal responses to national disasters. Robert works in the Washington, D.C. area.

4. Robert and Beulah are the parents of a son; he is a special needs child . . . on medication that he takes every eight hours or so. Beulah stays home to watch him and does not currently work.

5. The parties' daughter currently stays with Beulah from Friday mornings . . . to Monday evenings . . . . Kenneth has the child the rest of the week.

6. Kenneth currently lives in a home with his mother. Beulah currently lives in an Anchorage one-bedroom apartment.

7. Both parties have changed residences at least three times each in the last four years.

8. Kenneth's mother, Beatrice, has provided a large part of the child's care when the child has been in Kenneth's care, although Kenneth has certainly done his part in caring for the child. For example, when Kenneth resided at one apartment building in Anchorage, Kenneth lived downstairs and his mother lived upstairs. The child had a room in his mother's upstairs apartment. She slept in her grandmother's

apartment rather than with Kenneth. Beatrice regularly got the child off to school in the mornings because Kenneth was already at work.

9.     The child has just completed kindergarten in Anchorage at a small school with students from diverse ethnic backgrounds.

10.     The child's likely school in Pennsylvania is . . . a much larger school . . . (815 students vs. 230 students). It has much less ethnic diversity . . . .

11.     The child has a multi-cultured ethnic background. She is one-half African American, one-quarter Caucasian, and one-quarter Inupiat. Kenneth is African American. Beulah is Caucasian and Inupiat.

12.     Robert has rented a two-bedroom apartment in Pennsylvania for Beulah, the children, and himself. Robert and Beulah expect that their son and the parties' daughter will reside with them and a child that Robert has from another relationship.

13.     Kenneth's home and the apartment that Robert has rented are adequate and appropriate for the child's needs. The schools are both appropriate for the child's needs.

14.     The child is eligible for Alaska Native Medical Center care in Anchorage at no cost. Likewise Indian health benefits would be available to her in Pennsylvania. Kenneth's argument to the contrary was not credible.

15.     Kenneth and Beulah have been appropriate parents and care givers for the child. There have been no acts of domestic violence by either parent against the child. She is safe in the home of both parents.

16.     Beulah claims that Kenneth committed five different acts of domestic violence against her . . . .

17.     Beulah claims that at a concert at the Sullivan Arena in Anchorage in approximately December 2009 Kenneth sent a text message to Beulah asking for sex

from her.  Both parties attended the concert with others.  Kenneth was with his then-girlfriend and others, and Beulah was with another couple.  Beulah and her friends say that Kenneth angrily confronted Beulah in a commons area of the Arena about why she was not home with the child.  Her friend's husband says that Kenneth knocked a beer out of his hand.  The couple and Beulah testified that security showed up to remove Kenneth.  On the other side, Kenneth admits that there was a confrontation about Beulah not being home with the child but denies everything else.  Beulah also says that Kenneth grabbed her arm at the Sullivan Arena confrontation and tried to get her to leave with him.

18.    The confrontation at the Sullivan Arena was not an act of domestic violence by Kenneth against Beulah.  There was no coercion and there was no assault in the fourth degree.  There was no physical injury to Beulah and she was not in fear of imminent physical injury.

19.    The next claimed incident of domestic violence occurred in approximately January 2010.  The court finds that Beulah's description of the events of the evening is credible and that Kenneth's denial of the events of the evening is not believable.  Since the parties offer diametrically opposed views of what happened, the court has to find that one of the parties has perjured himself or herself about the description of events.  The court concludes that Kenneth has perjured himself by denying the events of the evening in question.

20.    Beulah testified credibly to the following facts.  On this January 2010 night late in the evening, Kenneth called her telephone number repeatedly (more than ten times).  Beulah eventually answered the telephone. . . . Kenneth made the telephone calls to Beulah from Beulah's parking lot.  The next thing that Beulah knew was that Kenneth was at her door and was forcing himself into her apartment.  Kenneth then learned that Beulah had a male friend staying with her.  Kenneth pulled a handgun on the male friend and ordered him to leave.  The male friend left and Kenneth then followed Beulah

around the apartment with the handgun still drawn. [Kenneth told Beulah that he had discharged a gun in public and needed an alibi.] Kenneth eventually put the handgun to Beulah's cheek and threatened to kill her. Beulah was in fear of imminent physical injury.

21. Beulah did not report the above events to the police and did not file for a long term domestic violence protective order. Beulah explained credibly that she has no faith in the police or the legal system because, as a teenager growing up in Kotzebue, she accurately reported to the Kotzebue police department that she was sexually assaulted, but the Kotzebue police department failed to pursue the matter.

22. Beulah's description of the events of the evening of January 2010 is also consistent with Kenneth's admitted practice of carrying a handgun with him in his car and on his person when [he] leaves his residence.

23. Beulah's third [alleged claim of domestic violence] by Kenneth against her occurred during an evening in December 2010 when Beulah was out drinking at the Last Frontier, a bar in the Muldoon area of East Anchorage. Kenneth showed up at the bar with a friend and demanded that Beulah leave with him. Beulah did not want to leave with Kenneth. However, [not wanting to make a scene, she left in] his vehicle. Kenneth took Beulah to her apartment and pushed her in the apartment after he unlocked the door. Beulah was in fear of imminent physical injury. Kenneth then took off with Beulah's purse and keys. The next day when Beulah got up she found her purse and keys were on her kitchen table. Again Beulah did not call the police or file for a long term domestic violence protective order for the same reason that she did not call the police or apply for a long term domestic violence protective order related to the earlier incident at her apartment. Kenneth's denial or lack of recollection of the events immediately related above is not credible.

24. The fourth claimed incident of domestic violence again started at a

bar when Beulah was out with friends . . . . Kenneth tried to grab and drag Beulah to his vehicle, but this time Beulah successfully resisted Kenneth. At this event, Kenneth did not display a firearm and did not threaten Beulah. This event was not an act of domestic violence.

25. The fifth alleged incident of domestic violence by Kenneth against Beulah occurred in the summer of 2012. Kenneth offered to provide transportation for Beulah when her vehicle was not working. Beulah testified that Kenneth offered her money and told her that he wanted to get back together with her. However, there was no violence, threat of violence, or coercion during this incident. There was no act of domestic violence during the summer of 2012 interaction between the parties.

26. As a result of the current custody arrangement, Beulah has been administratively assessed child support by Child Support Services Division at $596.00 per month. Even though Beulah has not been working since her son was born, she has not requested modification of child support until the present motion to modify was filed on April 30, 2014. Beulah owed Kenneth $1,679.99 in child support as of June 12, 2014.

27. Kenneth is employed during the week on an almost full-time basis as a mental health specialist. Kenneth was previously employed at a different mental health institution. Kenneth does not have a college degree, although the position that he now occupies is a college graduate equivalent position. Kenneth has about two years of college credits with an emphasis on psychology. Kenneth has not submitted any income information to the court. In addition to this employment, Kenneth has in the past worked as a bouncer on Friday and Saturday nights at an Anchorage bar. Finally, Kenneth has been an on-call security guard for a mall in Anchorage on Sundays.

28. Kenneth has been receiving and spending the child's Permanent Fund Dividends (PFDs) and her NANA dividends. The child is a shareholder in NANA

Regional Corporation.

29. Kenneth has never completed a domestic violence intervention program, also referred to as a batterers' intervention program. Such programs are reasonably available in Anchorage to Kenneth.

30. Neither party abuses alcohol regularly although both parties drink. There are no substance abuse issues by either party.

31. The parents do not communicate well, which is understandable given Kenneth's domestic violence, controlling attitudes, and efforts to reunite with Beulah when she did not wish to do so.

## CONCLUSIONS OF LAW

1. Pursuant to AS 25.20.110(a), the court may modify an award of child custody or visitation "if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child." The Alaska Supreme Court has said that the change in circumstances must be significant for a custody modification.[2] "When a court determines the best interests of the child under the changed circumstances doctrine, the scope of judicial inquiry is limited to facts directly affecting the child's well-being."[3]

2. The Alaska Supreme Court has repeatedly said that a move or a proposed move from Alaska . . . is a substantial change in circumstances as a matter of law.[4] In this case, the custody modification motion involves a move from Alaska to Pennsylvania. Such a move amounts to a substantial change in circumstances as a matter of law.

---

[2] *Garding v. Garding*, 767 P.2d 183, 185 (Alaska 1989).

[3] *S.N.E. v. R.L.B.*, 699 P.2d 875, 878 (Alaska 1985).

[4] *See, e.g.*, *House v. House*, 779 P.2d 1204, 1207-08 (Alaska 1989).

3. An act of domestic violence since the last custody determination is also a change in circumstances as a matter of law.[5]

4. Where, as here, parties have entered into a settlement agreement that resulted in joint legal and shared [physical] custody, it [would be] reversible error for the court not to consider in a subsequent modification proceeding claims of domestic violence that had never been raised or litigated.[6] Thus, the court must consider Beulah's previously unlitigated claims of domestic violence in making this modification of custody determination.

5. This court must determine whether the evidence of domestic violence amounts to a history of perpetrating domestic violence before it can consider the best interests of the child factors under AS 25.24.150(c)(l)-(9).[7] If the court finds a history of domestic violence, it must follow the custody determination path charted by AS 25.24.150(g)-(i) rather than the best interests of the child analysis of AS 25.24.150(c)(1)-(9).[8]

6. AS 25.24.150(g) provides that "[t]here is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other . . . may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child."

7. Pursuant to AS 25.24.150(h):

---

[5] AS 25.20.110(c).

[6] *Heather W. v. Rudy R.*, 274 P.3d 478, 485-86 (Alaska 2012); *McAlpine v. Pacarro*, 262 P.3d 622, 626 (Alaska 2011) (this rule of law is particularly important where one or both of the parties are pro se and issues of domestic violence have not been previously litigated); *Williams v. Barbee*, 243 P.3d 995, 1002-03 (Alaska 2010).

[7] *See Puddicombe v. Dreka*, 167 P.3d 73, 77 (Alaska 2007).

[8] *See id.*

A parent has a history of perpetrating domestic violence . . . if the court finds that, during one incident of domestic violence, the parent caused serious physical injury or the court finds that the parent has engaged in more than one incident of domestic violence. The presumption may be overcome by a preponderance of the evidence that the perpetrating parent has successfully completed an intervention program for batterers, where reasonably available, that the parent does not engage in substance abuse, and that the best interests of the child require that parent's participation as a custodial parent because the other parent is absent, suffers from a diagnosed mental illness that affects parenting abilities, or engages in substance abuse that affects parenting abilities, or because of other circumstances that affect the best interests of the child.

8.      Under Alaska law, domestic violence includes a crime against the person by one household member against another.[9] A crime against the person includes assault in the third degree or assault in the fourth degree.[10] Assault in the third degree involves "recklessly plac[ing] another person in fear of imminent serious physical injury by means of a dangerous instrument."[11] Assault in the fourth degree involves "recklessly caus[ing] physical injury to another person . . . or by words or other conduct . . . recklessly plac[ing] another person in fear of imminent physical injury."[12] Household members include adults who have lived together, adults who have dated, and adults who

---

[9]    AS 18.66.990(3)(A).

[10]   AS 11.41.220, .230.

[11]   AS 11.41.220(a)(1)(A).

[12]   AS 11.41.230(a).

have engaged in a sexual relationship.[13]

9.      Under Alaska law, domestic violence also includes harassment in the second degree.[14] Harassment in the second degree [includes] intentionally harassing or annoying another person by "mak[ing] repeated telephone calls at extremely inconvenient hours."[15]

10.      Under Alaska law, domestic violence also includes coercion.[16] The crime of coercion occurs when a person "compels another to engage in conduct from which there is a legal right to abstain . . . by means of instilling in the person who is compelled a fear that, if the demand is not complied with, the person who makes the demand . . . may inflict physical injury."[17]

11.      Kenneth and Beulah are household members for purposes of the definition of domestic violence under AS 18.66.990, because they are adults who have lived together and have engaged in a sexual relationship.

12.      The incidents of January 2010 constituted two acts of domestic violence by Kenneth against Beulah. When Kenneth called Beulah intentionally and repeatedly (more than ten times) from the parking lot of her apartment, he committed harassment in the second degree. This conduct is an act of domestic violence. During this same January 2010 incident when Kenneth pulled a handgun on Beulah, pointed it at her cheek, and threatened to kill her, he placed her in fear of imminent serious physical

---

[13]      AS 18.66.990(5)(B)-(D).

[14]      AS 18.66.990(3)(H); AS 11.61.120.

[15]      AS 11.61.120(a)(3).

[16]      AS 18.66.990(3)(A); AS 11.41.530.

[17]      AS 11.41.530(a)(1).

injury and committed assault in the third degree. This is another act of domestic violence.

13. When Kenneth forced Beulah in December 2010 to accompany him against her will to her apartment, . . . Beulah was also in fear of imminent physical injury. Kenneth's conduct constituted coercion and/or assault in the fourth degree. This conduct is yet another act of domestic violence.

14. Kenneth committed three separate acts of domestic violence against Beulah. These three acts of domestic violence constitute "a history of perpetrating domestic violence" as that phrase is used in AS 25.24.150(h).

15. Kenneth thus falls under the AS 25.24.150(g) rebuttable presumption against being awarded any legal or physical custody of a child.

16. Kenneth does not engage in substance abuse, but he has not completed a reasonably available program for batterers, and other circumstances that affect the best interests of the child do not demand that Kenneth participate as a custodial parent. This result is particularly accurate since Beulah is a safe parent who will have a nice apartment with Robert in Pennsylvania, where the child will be able to attend an adequate school and live with her younger brother, with whom she is well bonded.

17. Because Kenneth has not rebutted the presumption against custody applicable to batterers, Kenneth is not entitled to any legal or physical custody of the child.

18. Based on the applicable AS 25.24.150(g)-(h), Beulah is awarded sole legal and primary physical custody of the child, at a home of her choosing. Beulah is authorized to move to Pennsylvania, or any other place of her choosing with the child.

19. Under AS 25.24.150(j) because the court has found that Kenneth has a history of perpetrating domestic violence, "the court shall only allow supervised visitation"; however, the court may award unsupervised visitation if it finds by a

preponderance of the evidence that the batterer "has completed a substance abuse treatment program if the court considers it appropriate, is not abusing alcohol or psychoactive drugs, does not pose a danger of mental or physical injury to the child, and unsupervised visitation is in the child's best interests."

20. Substance abuse treatment is not appropriate for Kenneth because he is not and has not been abusing alcohol or psychoactive drugs.

21. Kenneth does not pose a danger of mental or physical injury to the child. Kenneth has had the majority of the custodial time with the child since 2012. He has not engaged in any acts of domestic violence against her. Kenneth has met the child's educational, emotional, and physical needs.

22. Unsupervised visits between Kenneth and the child are in her best interests. This result is particularly appropriate in light of the history of Kenneth meeting the child's needs, the loving bond between the child and Kenneth, and between the child and Kenneth's mother, and the lack of substance abuse by Kenneth.

23. If Beulah elects to depart for Pennsylvania immediately, Kenneth shall have visitation with the child until one week before school is to start in Pennsylvania.

24. If Beulah elects to stay in Anchorage until one week before school starts in Pennsylvania, the present schedule shall remain in place with Beulah having the child between Friday mornings to Monday evenings, and Kenneth having the child the rest of the week.

25. In the future, Kenneth shall have summer visitation with the child from one week after school ends in the spring until one week before it begins again in the fall.

26. Kenneth is entitled to visitation with the child every other Christmas holiday. The Christmas holiday is defined as the day after school gets out until the day

before school begins. Kenneth's first Christmas with the child shall be the holiday of 2015-16.

27.     The parties shall split equally the costs for transportation for the child for summer visitation and alternating Christmas visits. The child must be accompanied by a chaperone for air travel until she is 12 years old. Each party shall pay for his or her own airfare as a chaperone. Beulah shall be responsible for chaperone duty to get the child home at the end of a visit. Kenneth shall be responsible for chaperone duty picking up the child for visits.

28.     Within ten days Kenneth shall turn over to Beulah any unspent child PFDs or native corporation dividends. Beulah may spend those funds for the child's benefit. In the future, Beulah, and only Beulah, is authorized to receive the child's native corporation dividends and PFDs, if applicable.

29.     For 2014, Kenneth is entitled to the federal income tax exemption for the child because he had the majority of custody for the year. In future years, Beulah is entitled to the IRS federal income tax exemption.

30.     The non-custodial parent is entitled to one daily telephone call with the child for no more than 15 minutes at an agreed time or, if there is no agreed time, between 6:30 p.m. and 8:00 p.m. at the time where the child is located. Each parent will make a telephone available to the child for the calls and will keep the other parent advised of the telephone number to make the calls.

31.     The parents shall communicate by emails and text messages only, except in emergencies the parties can communicate by telephone.

32.     The parties shall keep each other advised of their telephone number and addresses.

33.     The parties shall not disparage or bad mouth the other parent in the child's presence or encourage others to do so. The parents shall not use the child as a

messenger.

34. Beulah shall list Kenneth as a parent on all school, medical, and other records. Beulah shall provide Kenneth with the names, addresses, and contact numbers for all schools and medical providers. Pursuant to AS 25.20.130, Kenneth is entitled to access to the child's educational and medical records, but it is Kenneth's obligation to request the records from the school or medical provider.

35. The court orders Kenneth to take and complete a 36-week Department of Corrections approved batterers' intervention program at his cost and expense. Kenneth shall provide the court with a certificate of successful completion of the program. The court will consider the successful completion of the court-ordered batterers' intervention program to be a material change in circumstances for purposes of evaluating any future custody modifications.

36. Kenneth shall pay child support pursuant to Alaska Civil Rule 90.3(a). Within ten days of the date of this order, Kenneth shall provide the court with his 2013 federal income tax return, his last four paystubs, and a completed DR-305. If Kenneth fails to provide the court with the requested financial information the court will impute income to Kenneth and enter a child support order based on the imputed income.

37. Beulah is not entitled to relief from her past child support obligation since such relief would be a retroactive modification of child support prohibited by Rule 90.3(h)(2).

38. Beulah may apply to the court for an award of attorney's fees related to the motion to modify.

DATED this 2nd day of July, 2014, at Anchorage, Alaska.

/s/ Frank A. Pfiffner
Superior Court Judge